### DILLON v. CRAIG

1. Assumpsit — Case — Counts — Declaration — Misjoinder — Actions.

A count in a declaration purporting to be in case, charging that defendants, some of whom were creditors of plaintiff, as such, agreed that if plaintiff would permit a certain firm of adjusters to adjust plaintiff's loss by fire with several insurance companies that had issued policies to him, plaintiff might deposit the proceeds in a bank named by them, that instead of depositing the funds as agreed, the defendants, wilfully intending to injure plaintiff and deprive him of his policies of insurance, procured and permitted said adjusters to appropriate to their own use $10,000 of the funds collected, stated, in the absence of a demurrer, a sufficient cause of action in assumpsit instead of trespass on the case.

2. Same—Fraud.

A second count, charging similar facts and alleging false pretenses, stated a cause of action for fraud, sufficient if not demurred to.

3. Same—Election.

The misjoinder of causes of action should be raised by an appropriate pleading, but upon a motion to require an election between the counts, made at the commencement of the trial and again at the close of plaintiff's case, plaintiff should have been required to elect between them.

4. Estoppel—Debtor and Creditor—Duty to Speak.

As to creditors of plaintiff with whom a compromise of his debts was effected, and from whom he concealed the fact that he intended to bring an action against certain of them for participating in the alleged wrongful conversion of the insurance funds, plaintiff was estopped from making the claim that they were liable to him, since they were entitled to full information concerning his assets, including such claim.

5. Trover and Conversion—Fraud—Insurance Funds.

There was evidence sufficient to present a question of fact as to one of the defendants who took charge of plaintiff's insurance matters, advised him to employ the defendant insurance adjusters to settle the amount of plaintiff's loss, and who

turned over to the adjusters, against plaintiff's protest, an excessive amount as compensation for their services out of the proceeds of the insurance money, in contravention of plaintiff's agreement with his creditors.

6. SAME—RATIFICATION.

It was not a ratification of any alleged wrongful acts that plaintiff, after learning of the payment to the adjusters, indorsed over to them, in pursuance of his agreement with the creditors, other checks and drafts received.

Error to Wayne; Mandell, J. Submitted March 1, 1911. (Docket No. 67.) Decided November 3, 1911. Rehearing denied March 30, 1912.

Case and trover by Hugh Dillon against Frank D. Craig and others. A judgment for certain defendants on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed as to a part of the defendants. Reversed as to defendant Fixel.

*Sloman & Sloman* (*James H. Pound*, of counsel), for appellant.

*Bernard B. Selling*, for appellees Fixel, Krolik and others.

*Geer, Williams, Martin & Butler*, for appellees Burnham, Stoepel & Co.

BLAIR, J. In the language of plaintiff's brief—

" Plaintiff brought this action of trespass on the case and trover against the defendants jointly to recover damages for unlawfully depriving him of certain policies of insurance, and of ten thousand ($10,000.00) dollars of money, etc., received by the defendants upon the adjustment of a fire loss thereunder."

The first count in the declaration, after reciting that plaintiff was engaged in the retail dry goods business, that on the 5th day of February (1907) a fire occurred, which destroyed a greater part of his stock, etc., that he had certain insurance policies covering said stock, etc.,

the loss upon which was afterwards adjusted at $20,000, that Craig, Wright & Walker were engaged in the business of adjusting insurance losses, that Burnham, Stoepel & Co. and A. Krolik & Co. were engaged in the wholesale dry goods business, and were creditors of plaintiff, alleges—

"That shortly after the fire aforesaid, said defendants, Burnham, Stoepel & Co. and A. Krolik & Co., the former acting by their agent, George A. Corwin, and the latter by the defendants Adolphus Fixel and said Craig, Wright & Walker, agreed with plaintiff that if plaintiff would permit the defendants Craig, Wright & Walker, who had adjusted the fire loss under said policies, to collect (among other policies) the moneys due and owing thereon under their direction, that said moneys so collected would be deposited to the account of plaintiff in the Old Detroit National Bank in the city of Detroit. That, relying upon said agreement and understanding, plaintiff, on or about the 16th day of February, 1907, placed said policies of insurance, upon which there was then owing plaintiff the sums aforesaid, in the possession of the defendants Craig, Wright & Walker, to collect, under the supervision and control of said defendants Burnham, Stoepel & Co. and A. Krolik & Co., in order that the moneys collected therefrom should be deposited and placed to the credit of plaintiff in said bank.

"Plaintiff avers that on or about February 23, 1907, the moneys so due and owing upon said policies, respectively, were paid to the defendants Craig, Wright & Walker, and that it then and there became the duty of said defendants to deposit or procure the same to be deposited in said bank to said plaintiff's credit and account. That said defendants wholly neglected their duties and obligations in this regard, and did not deposit said moneys in said bank to the account and credit of plaintiff, but, wilfully intending to injure and harass plaintiff and deprive him of the said policies and the moneys owing thereon and so paid over to said defendants Craig, Wright & Walker, and acting in concert with said defendants Craig, Wright & Walker in relation thereto, caused, procured, and permitted the said defendants Craig, Wright & Walker to appropriate and convert to their own use the sum of ten thousand ($10,000) dollars of the said insurance moneys so paid over to them on account of said policies as

aforesaid, whereby said plaintiff has sustained great loss and damage," etc.

The second count, in substance, follows the first down to the statement of the alleged grievances, which is as follows:

"That shortly after the fire aforesaid said defendants Burnham, Stoepel & Co. and A. Krolik & Co., the former acting by their agent, George A. Corwin, and the latter by the defendant Adolphus Fixel, acting in concert with the defendants Craig, Wright & Walker, and wrongfully intending to injure and harass the plaintiff and deprive him of his money and property, under the guise and pretense of befriending, aiding, and assisting him in conserving and protecting his interests, in that he might more easily and readily pay his creditors to whom he was then indebted, and to collect the moneys on the policies of insurance hereinbefore mentioned, and procure the deposit of the same to his credit and account in the old Detroit National Bank of the city of Detroit, then and there, to wit, February 16, 1907, while thus acting in concert with the defendants Craig, Wright & Walker, and having lulled said plaintiff into a false sense of security by sundry wiles and subtle devices, caused, procured, and induced plaintiff to place the policies aforesaid with the defendants Craig, Wright & Walker to collect and receive the money thereon, and which moneys the said defendants then and there assured and represented to plaintiff, when so collected or paid over to the defendants Craig, Wright & Walker, would be promptly deposited by said defendants in the old Detroit National Bank to the credit and account of said plaintiff.

"That in furtherance of said wrongful purposes to deprive plaintiff of his said moneys and property as aforesaid, the said defendants Burnham, Stoepel & Co., by their agents aforesaid, then and there acting in concert with said defendants Craig, Wright & Walker, and on or about the 23d day of February, 1907, caused and procured plaintiff to indorse and deliver to said Craig, Wright & Walker the checks and drafts given by the respective insurance companies in payment of their respective policies of insurance aforesaid, which were payable to plaintiff's order, and aggregated the amount of, to wit, $20,000. That by reason of the premises, the said defendants Craig, Wright & Walker came into the possession

of said policies of insurance and the money owing and due thereon as aforesaid, and the drafts and checks given by said companies, respectively, in payment thereof.

"And the plaintiff avers that in further pursuance of said wrongful purposes, and wickedly intending then and there to wrong and deprive plaintiff of his said policies and the money due and owing and paid thereon, and the drafts and checks aforesaid delivered in payment thereof, the said defendants then and there failed and neglected and refused to deposit the moneys, checks, drafts, etc., so collected by and paid over to said defendants Craig, Wright & Walker in the said Old Detroit National Bank to the credit and account of the plaintiff, except a small portion thereof, and then and there caused, procured and permitted the said defendants Craig, Wright & Walker to retain, keep, and convert of said moneys the sum of, to wit, $10,000. That by reason of the premises said moneys so retained, kept, and converted by said defendants Craig, Wright & Walker became and were wholly lost to plaintiff, whereby he has sustained great damage," etc.

The third and fourth counts of the declaration are in trover, alleging, respectively, the conversion of the policies and the conversion of the drafts and moneys received thereon. The defendants pleaded the general issue alone, except Craig, Wright & Walker, who gave notice under their plea that the $10,000 was paid them for services rendered in adjusting the losses referred to in the declaration, pursuant to an express agreement.

Before any testimony was given, defendants requested the court to compel the plaintiff to elect upon which counts he expected to recover, alleging that the first count was in assumpsit and could not be joined with the counts in tort. This request was refused, without prejudice to renewing it when the proofs were in. Upon the conclusion of plaintiff's proofs, upon motion of defendants' counsel, the court directed a verdict for defendants Burnham, Stoepel & Co., A. Krolik & Co., and Adolphus Fixel, and ordered the case to proceed as to Craig, Wright & Walker.

The grounds upon which the verdict was directed were, as stated by the court:

" I find and determine that the evidence shows that the plaintiff secured, through his authorized agent, a settlement which was advantageous to himself, and involving a loss to these defendants, at a time when he entertained a secret and purposely undisclosed intention of subsequently claiming damages for wrongs which he seeks in this suit to recover. By his silence he sought to gain advantage, and, under the approved doctrine that one cannot be permitted to gain an advantage by remaining silent when it is his duty to speak, the plaintiff is now estopped from urging his further claim, and from denying that the settlement effected was of all outstanding claims against the defendants. Defendants are not shown to have known of the contemplated claims, and there is no reason given why they should have known. On the contrary, every legitimate inference is that they did not know or suspect until long after accepting 90 cents on the dollar of the claim. It cannot be successfully urged that this claim is of a different class than the one compromised by the plaintiff at 90 cents on the dollar, or that each claim was independent of the other, for the reason that the amount of assets plaintiff was able to marshal in order to compromise his obligations was material to the determination by defendants of how much or how little they would be willing to accept in payment of their claims, and the intentional concealment of the asset of $10,000 worked a disadvantage to the defendants as well as to the other creditors of the plaintiff. This would dispose of the case against these defendants, but I think in view of the character of the charges they are entitled to a ruling by the court upon the other charges.

"To repeat what I said a moment ago about the charges generally, these defendants are charged, to speak in a general way, with having joined with the defendant firm of Craig, Wright & Walker, in an unlawful conspiracy to fraudulently deprive the plaintiff of some $10,000; and, second, with the unlawful conversion of insurance policies, drafts for insurance moneys, and insurance moneys. There is no positive proof that there ever was a direct undertaking between the defendants to commit a fraud upon plaintiff, but plaintiff claims that such an undertaking is established by inference from the acts and conduct of the defendants. It would profit nothing to enter into a detailed discussion of the evidence that it is claimed establishes the charges in the declaration. Suffice

it to say, I find and determine that the evidence construed most favorably against these defendants fails to raise a presumption against them under the charges and wording of the declaration, and the jury would be unwarranted in holding them guilty under the evidence presented."

Judgment was entered upon the directed verdict, to review which plaintiff prosecutes this writ of error.

On February 5, 1907, a fire occurred in the plaintiff's store, which caused great damage to his stock of goods. He had his stock of goods insured in different amounts by a large number of insurance companies; the total amount of insurance being about $76,000. At the time of the fire, plaintiff was indebted to about 100 creditors in the amount of $70,000 to $75,000.

Mr. Geo. A. Corwin was the secretary and credit man of Burnham, Stoepel & Co., and Adolphus Fixel was the credit man of A. Krolik & Co. As such credit men, Corwin and Fixel had charge of the collection of the indebtedness due from plaintiff to their principals, amounting, in the case of Burnham, Stoepel & Co., to the sum of $14,000, and in the case of A. Krolik & Co., to $10,000. The declaration proceeds upon the theory that the principals acted only through their agents, and there is no testimony in the record indicating, either directly or indirectly, that the principals specially authorized the payment of the $10,000 to Craig, Wright & Walker, or ratified the payment after knowledge of the facts. Neither is there any evidence tending to show that the principals conspired in any way to defraud or injure plaintiff, or indicating any desire to take advantage of his necessities or to do anything inconsistent with fair treatment. So far as the record discloses, no part of the $10,000 went to them, but, on the contrary, its payment diminished the amount which they received. Their liability, if any, must rest upon the doctrine of *respondeat superior*. The defendants put in no testimony.

In our opinion, the first count should be treated as stating a cause of action in assumpsit, and, in the absence of

a demurrer, the second count sufficiently states a cause of action in trespass on the case for fraud.   *Storrs* v. *City of Grand Rapids*, 110 Mich. 483 ( 68 N. W. 258 ).

Although the misjoinder of causes of action ought strictly to have been raised by an appropriate pleading, still we think that the election insisted upon by defendants at the outset and again at the close of plaintiff's proofs should have been ordered.   *Haines* v. *Beach*, 90 Mich. 563 ( 51 N. W. 644 ); *Doyle* v. *Pelton*, 134 Mich. 398 ( 96 N. W. 483 ).

Does the doctrine of estoppel apply ?   Plaintiff arranged with Mr. Joseph L. Hudson to obtain a settlement with his creditors, which Mr. Hudson secured at 90 cents on the dollar.   Plaintiff did not inform Mr. Hudson that he had any claim against the defendants to recover the $10,-000, and he knew nothing of such claim.   Acting under the advice of his attorney, plaintiff intended to bring suit on the present cause of action against Burnham, Stoepel & Co. and A. Krolik & Co. as soon as the settlement was made, and not to disclose such intention; and the important question is,  Did the circumstances require him to disclose such intention ?   Plaintiff and his wife repeatedly testified that the understanding with Corwin and Fixel was—

"That all drafts and all moneys that come back through the insurance policies would have to be deposited in the Old Detroit National Bank in Hugh Dillon's name *for the benefit of his creditors.*"

Plaintiff further testified that he signed a paper to that effect.

" I didn't read it myself.   I signed one that money was to be all deposited in the Old Detroit National Bank *for the benefit of my creditors.*"

Plaintiff's wife testified that she and plaintiff attended one meeting of creditors at the Old Detroit National Bank, and it is inferable from her testimony that the amounts derived from and paid out of the insurance fund were con-

sidered, and that she and her husband said nothing of their claim. It is further apparent that plaintiff must have known that the creditors were acquainted with the state of that account, and were treating the $10,000 as properly paid out of moneys deposited for their benefit, and which otherwise would have come to them. Their excuse for not enlightening their creditors at the bank meeting was:

"We were acting under our attorney's advice. We knew we were to make a claim; we kept our mouths shut and asked for further time, and subsequently accepted terms at 90 cents on the dollar."

We think the circumstances called upon the plaintiff to open his mouth and acquaint the creditors with his claim, and, not having done so, we agree with the circuit judge that he is now estopped to prosecute such claim against defendants Burnham, Stoepel & Co. and A. Krolik & Co., and a verdict was properly directed in their favor.

As to defendant Fixel, the case is different. The verdict having been directed, we must give to plaintiff's proofs the utmost probative force of which they are reasonably capable. So considered, the proofs tended to show that Fixel, having the confidence of plaintiff, induced him to transfer the collection of his insurance from Van Antwerp, with whom he had arranged, to Craig, Wright & Walker, and to turn over the whole conduct of his affairs to Fixel and Corwin; that, knowing that plaintiff had made no agreement whatever with Craig, Wright & Walker as to their compensation, and in contravention of the agreement as to the deposit of the collections, Fixel, without the knowledge or consent of plaintiff, paid over to or authorized Craig, Wright & Walker to take $10,000, which he knew to be a grossly excessive sum for such compensation.

Mrs. Dillon testified:

"Mr. Fixel brought me up this memorandum, and told me he had deposited that much money in the bank—$9,151.50. The statement from the Old Detroit National

Bank that I produced here shows a credit on that date of that amount. Fixel says: 'Now, we can write out some checks.' And I said: 'Mr. Fixel, there was more drafts than that come back, and Mr. Dillon said he signed a whole lot of drafts.' And he said: 'Well, I give Craig, Wright & Walker $10,000.' And I said: 'My God, did you give our money away? I thought we agreed you were to put all the money in the Old Detroit National Bank for the benefit of our creditors, and that Mr. Dillon was to sign those checks?' He said, 'Well, I give them their money,' and he sneered at me in his way, and walked out of the office and down the stairs and outside. The amount of the policies that had been paid on that day was $19,151.50; the amount of the deposit, as appears by that slip is $9,151.50."

Mr. Dillon testified:

": On the 6th of February, about that time, Mr. Fixel told me straight, 'Don't go near no attorney;' and, he says: 'You take my advice; just keep my instructions, and leave it to us; don't go near any attorney.' * * * I let them go ahead and do as they saw fit. * * * After the inventory was taken and after the checks began coming back, or the drafts, whichever they were, Mr. Fixel came over to our house and wanted us to turn over our lease. The following day he came up to the second floor of the store, and he wanted Mrs. Dillon to write out a check for their company (A. Krolik & Co.) and for Burnham, Stoepel & Co., and she says, 'I am busy now.' And he says: 'Well, I am busy, too; I want you to write out two checks.' And he says: 'You have money now; there is money in the fund, and I want those two checks.' And so she says: 'Well,' she says, 'to tell you the truth, Mr. Fixel, I won't write any more checks without the consent of my attorney.' And so he says: 'Your attorney! Have you an attorney?' And she says, 'Yes, I have.' 'Well, he says—he shoved his fist to her nose— 'I will tell you right now, woman, I will leave you without a dollar, and,' he says, 'I will take the rings from your fingers, and leave you without a dollar if you take an attorney into this case. And what attorney did you get?' And she says, 'Mr. Sloman.' And I says: 'Mr. Fixel, look here. You have robbed us long enough, and I took you for a friend. You acted as a friend to me all

168 MICH.—15.

along,' I says. 'I took you for a friend, and, instead of that,' I says, 'you gave $10,000 of my money away, and my goods is gone, and I have done everything to please you because I depended upon you. Now I have nothing to pay 100 cents on the dollar with, which I wanted to do, and which I intended to do right along,' I says. 'It will be different now. We will do as our attorney tells us from this on.'"

It is apparent, therefore, that, before the settlement, Fixel knew that plaintiff was not acquiescing in his turning the $10,000 over to Craig, Wright & Walker, but, on the contrary, was characterizing such act as robbery. The fact that plaintiff, in accordance with the written agreement, indorsed other drafts and checks over to Craig, Wright & Walker, after knowledge of the wrongful payment, no more affirmed its legality as to Fixel than as to Craig, Wright & Walker. Plaintiff complained to Fixel himself; he was under no obligation to him to complain to any one else. Plaintiff owed no duty to Fixel as an individual wrongdoer; he had full knowledge of all the facts; and we find no basis for an estoppel as to him.

The judgment is affirmed as to defendants Burnham, Stoepel & Co. and A. Krolik & Co., and reversed and a new trial ordered as to defendant Adolphus Fixel. Defendants Burnham, Stoepel & Co. and A. Krolik & Co. will recover costs against plaintiff, and plaintiff will recover costs against defendant Fixel.

OSTRANDER, C. J., and BIRD, STEERE, MOORE, MC-ALVAY, BROOKE, and STONE, JJ., concurred.