CITY OF KALAMAZOO v. STANDARD PAPER CO.

1. PLEADING—JOINDER OF TORT AND ASSUMPSIT—CASE—TRESPASS ON THE CASE—TROVER—MISJOINDER.

Where a municipal corporation commenced an action for unlawful tapping of its water mains and unauthorized use of water from the city water supply, setting up in its declaration the ordinance relating to the use of water, so as to establish the existence of a contract relation between the parties, there was no misjoinder of the first three counts that sounded in case, and the remaining counts which were intended to be in trover for the illegal conversion of water, the ordinance prohibiting consumers of water from taking water without metering and paying for it.

2. TRIAL—EXHIBITS—JURY.

While .it is improper practice to allow the jury to take to the jury room, when they retire, memoranda or exhibits, without the consent of opposing counsel, if the appellant was not prejudiced by such proceeding it is not reversible error, and where the plaintiff introduced in evidence extended computations showing the amount of water claimed to have been unlawfully diverted from the city pipes, extending over a period of years, and the jury was allowed to have these computations, no reversible error was committed, their verdict being much less than the totals claimed.

3. WITNESSES—CROSS-EXAMINATION—STATUTES.

Where plaintiff called for cross-examination the agents and servants of defendant, and they gave testimony under Act No. 307, Pub. Acts 1909 (5 How. Stat. [2d Ed.] § 12865), the court committed no error in charging the jury that the plaintiff was not bound by their answers and might accept as true such part or parts of their testimony as it might elect, further cautioning the jury that they must consider all the testimony in the case and making it clear to the jury that such testimony as was favorable to defendant was not eliminated but was to be weighed or considered with the other testimony.

4. MUNICIPAL CORPORATIONS—WATER SUPPLY—TAKING ILLEGALLY.

In an action by a city against a corporation consumer of water, which had tapped the mains and diverted water around the meter without paying for it, evidence tending to show that sham or wrongful devices were installed for the purpose of taking defendant's water without metering it, and to conceal the true state of facts, justified the charge of the trial court that if defendant secured water without charge by this means, it was liable even if its officers, directors, and stockholders did not know of the wrongful use.

5. SAME—DAMAGES—EVIDENCE—UNCERTAINTY.

Where it was uncertain how much water had been illegally taken from the municipal mains, and the plaintiff claimed the value of the whole amount which its evidence showed could have been taken or converted, the want of certainty in the element of damages was attributable to the defendant's fault, and although defendant claimed that such an amount could not have been diverted, the defendant cor-

poration was liable for the full value of the property at the time of conversion, with interest to the date of judgment.

6. SAME—CONVERSION—EXCESSIVE AMOUNT OF DAMAGES.

Damages amounting to $15,840 *held*, to be warranted by plaintiff's evidence.

7. TRIAL—ARGUMENT—APPEAL AND ERROR.

Arguments called out by remarks of appellant's attorney, and objected to by him, were not prejudicial error when they were made in response thereto and were cured by the instructions.

Error to Kalamazoo; Knappen, J. Submitted April 20, 1914. (Docket No. 22.) Decided October 2, 1914.

Case and trover by the city of Kalamazoo against the Standard Paper Company for the conversion of water from the pipes of plaintiff. Judgment for plaintiff. Defendant brings error. Affirmed.

*Harry C. Howard*, for appellant.

*Marvin J. Schaberg* (*John W. Adams*, of counsel), for appellee.

KUHN, J. This is an action brought by the city of Kalamazoo against the Standard Paper Company, to recover the value of water which plaintiff alleges was converted by the defendant during the period from November 17, 1906, to November 17, 1910.

The defendant company is a manufacturer of paper, and in the process of manufacture uses a large amount of water. It had constructed an aqueduct, by means of which it could bring water from the Kalamazoo river to reservoirs near its mill. In 1906 an automatic sprinkling device was installed by the defendant, ostensibly with two sources of supply; one being a pressure pump pumping directly from the defendant's reservoir, the other being the city water

brought to the sprinkler system by a six-inch line connected with the city mains. This is a customary arrangement to insure a supply from the factory's own source and a supply from the outside in case of injury to the private supply during a fire. The city water was furnished by direct pressure from the city waterworks, and the defendant's pressure pump and the city waterworks were connected on the same line. This arrangement is shown by the defendant's Exhibit 4, here set forth.

At this time there was no meter on the city's line to this sprinkler system, nor on the lines to sprinklers in other factories. There was a clapper valve in the line designed to keep the water pumped by the pressure pump from entering the city mains when the private pressure exceeded the city pressure, and only to allow the city water to pass into the sprinkler system when the private pressure fell below the city pressure.

During the aforementioned period, there were three water service lines to the defendant's property. One was a three-fourths-inch metered pipe furnishing water to the office. Another was the line to the sprinklers, just described. The third was a 4-inch main, with a 2½-inch metered connection running to one of the two overhead tanks which supplied the filtered water for the manufacturing process. The city installed a sealed 2-inch by-pass around this meter, to be used only when the meter should be taken out for repairs.

It is charged by the plaintiff, and support thereof is found in the evidence, that the defendant opened the 2-inch by-pass around the meter, tapped the sprinkler system in numerous places, made connections on the three-fourths-inch pipe ahead of the meter, and unlawfully took and used city water from these three sources without its having been registered

Defendant's Exhibit 4

by meters and without paying for it, in violation of ordinance No. 197 of the city of Kalamazoo, which provided rules and regulations under which water was to be used. It is charged, and there was evidence to support it, that there were 27 taps put on the sprinkler system and water taken through them under orders from the defendant's superintendent and with the approval of the defendant's manager.

In August, 1910, computations having been made which showed that less than 50 per cent. of the water delivered into the mains by the city waterworks was being paid for, ordinance No. 305 was passed by the city council, requiring meters on all water lines, save as therein provided. Accordingly, on November 17, 1910, a Hersey detector meter was installed on the defendant's sprinkler line, and a 28-hour test revealed that the defendant was receiving a much larger amount of water than it was paying for, and that the conditions during this 28-hour period were no different than they had been before that time. Immediately thereafter the fire pump was dismantled and repaired, and the taps on the sprinkler system disconnected. An investigation was made by city officials which revealed that the pressure pump gauge showed a pressure equal to the city pressure. But, when the city main was suddenly cut off, the gauge on the defendant's pressure pump dropped from 68 pounds to 5 pounds. A further investigation by a council committee followed, in which it was found that the defendant was taking city water in the three ways hereinbefore described. It is the plaintiff's claim, and evidence was presented tending to show, that the defendant's pressure pump was a mere blind, and that it never did maintain a pressure equal to or greater than the city pressure.

On the other hand, it was claimed by the defendant that the taps had been put on the sprinkler system

182 Mich.—31.

by its mechanics for their own convenience, and without the knowledge of the defendant; that its pump maintained a pressure greater than the city pressure up to a short time prior to the suit; and that up to said time no city water was drawn from the taps. It was also claimed by the defendant that the water was taken from the 2-inch by-pass on the 2½-inch line openly, with the constructive knowledge of the plaintiff's inspector; also that, at the time the Hersey meter was read, the pressure pump was down for repairs, and there was a large leak in the basement, causing a large temporary waste of water; that the flow during the 28 hours during which the test was being made was unusual, and therefore not a fair basis on which to estimate the amount used in four years.

The evidence in support of these claims being submitted to a jury, a verdict was found for the plaintiff in the sum of $15,840.76, and judgment was entered thereon by the court. Defendant's motion for a new trial was overruled. The cause being removed here by writ of error, the assignments of error are grouped by counsel for convenience as follows:

"(1) Errors in the ruling of the court during the trial and errors in rulings on misjoinder of assumpsit and tort counts.

"(2) The error committed by the court in permitting a statement or account, not an exhibit in the case, prepared by plaintiff's counsel, of plaintiff's claim, to be taken to the jury room.

"(3) Improper arguments of counsel.

"(4) Errors in the court's charge and refusals to charge.

"(5) Excessive verdict."

The declaration of the plaintiff contains six counts. It is appellant's claim that the first four counts are all in assumpsit, and the last two are in tort, and that these two actions cannot be joined, and the plain-

tiff must elect. The plaintiff does not dispute the latter contention, but says that the first three counts are purely counts in trespass on the case, and the last three are in trover. The claim that the counts are in assumpsit is urged because of the fact that ordinance No. 197 of the city of Kalamazoo, with relation to the waterworks, is set forth in these counts, and that in effect a contract relation between the parties is alleged. The plaintiff's claim is that the defendant, without any regard for the ordinance, took water wrongfully and unlawfully. It appears, from a reading of these counts, that the ordinance is set forth for the purpose of showing that the conduct of the defendant in this case was unlawful, unauthorized, wrongful, and in violation of the law of the city of Kalamazoo; which makes these counts sound in tort instead of in contract. In the case of *Dillon* v. *Craig*, 168 Mich. 216 (132 N. W. 1041), relied upon by the defendant, the declaration showed a contract obligation, and there was no statute or ordinance which made the violation of the contract tortious. There is no merit to appellant's contention as to a misjoinder of counts.

During the final argument of plaintiff's counsel, in the discussion of the question of damages, two typewritten computations which had been prepared were handed to the jury, showing how the plaintiff estimated its damages. The statements were as follows:

First Statement.

HERSEY METER.

27,144 cubic feet in 24 hours.

27,144x365 days equals 9,907,560 cubic feet per year.

9,907,560x4 years equals 39,630,230 cubic feet.

Water rates are:

$1.00 for each 1,000 cubic feet up to 3,000.

.80 for each 1,000 cubic feet from 3,000 to 10,000.

.60 for each 1,000 cubic feet over 10,000.

```
3,000 cubic feet at $1.00 equals...............    $3 00
7,000 cubic feet at   .80 equals...............     5 60
39,620,230 cubic feet at .60 equals............. 23,772 14
                                                 ──────────
                                                 $23,780 74
Take out $444.93 paid by defendant...........      444 93
                                                 ──────────
                                                 .$23,335 81
Add interest at 5 per cent. from November 17,
  1910, 1 year, 2 months, and 25 days, equals..  1,442 25
                                                 ──────────
                                                 $24,778 06
```

### Second Statement.

May 17, 1909, got third machine working.

May 17, 1909, to November 17, 1910, equals 18 months.

That leaves out of the 4 years, 30 months, defendant had two machines.

With 3 machines defendant used 1,500,000 gallons.

With 2 machines defendant used 1,000,000 gallons.

27,144 cubic feet for 24 hours equals 9,907,560 cubic feet per year, or 14,861,340 cubic feet for 18 months, using in the mill 1,500,000 gallons per day.

2 machines used 1,000,000 cubic feet in 24 hours, or two-thirds as much water as the 3 machines.

Two-thirds of 9,907,560 equals 6,605,040 per year.

30 months equals 2½ years.

6,605,040x2½ equals 16,512,600.

Add together what 3 machines used in 18 months and what 2 machines used in 30 months:

14,861,340 plus 16,512,600 equals 31,373,940 cubic feet.

```
3,000 cubic feet at $1.00 equals...............    $3 00
7,000 cubic feet at   .80 equals........:......     5 60
3,136,940 cubic feet at .60 equals............. 18,818 36
                                                 ──────────
                                                 $18,826 96
Take out $444.93 paid by defendant..........       444 93
                                                 ──────────
                                                 $18,382 02
Interest at 5 per cent. from November 17, 1910,
  1 year, 2 months, 25 days.................      1,136 03
                                                 ──────────
                                                 $19,518 06
```

These statements were read in open court in the presence of counsel. An examination of these statements shows that they are nothing more or less than

computations in arithmetic, based on facts claimed to have been proved by the plaintiff in the case. When the jury was about to retire, plaintiff's counsel called the court's attention to the fact that some of the statements were still in the hands of the jury, and said with reference thereto:

"It is simply a computation, as claimed by the plaintiff, as to the amount of damages along the two lines mapped out on that paper. We claim it is for the consideration of the jury the same as any other fact in the case, not binding, but that they may consider it in arriving at their verdict. We have no objection to the jury taking that to their jury room, and, if the other side have some figures they wish to give to the jury, we have no objection."

It is claimed that these statements were never given to defendant's counsel for examination. The record does not show that copies were requested, and counsel must have heard the contents thereof as they were read to the stenographer. Counsel was unquestionably entitled to copies, and undoubtedly such copies would have been furnished, if a request had been made.

It is urged that allowing the jury to take the memoranda to the jury room was error, under the decision of this court in *Harroun* v. *Railway Co.,* 68 Mich. 208 (35 N. W. 914). It seems to be clear that, according to the rule announced in that case, the practice followed in the instant case is not to be commended, and that it was improper for the court to allow these memoranda to be taken into the jury room without the consent of the opposing counsel. We are of the opinion, however, that the defendant was not prejudiced thereby, as the verdict of the jury was in a sum considerably less than the amounts claimed in the computations.

In his charge the court gave the following:

"(5) I instruct you that the plaintiff has called

the following witnesses: Alexander Clark, William Wilhelm, Fred Phetteplace, Jason Spade, Jeremiah Linehan, Frank Handy, William Hewitt, Walter Jones, Perry Norman, Warren Johnson, William Gaylor, Ernest Shepard, and George Harvey, under Act No. 307 of the Public Acts of Michigan for the year 1909, which provides as follows:

" 'An act to authorize parties litigant, when they call as witnesses in their behalf the opposite party, employee, or agent of said party, to cross-examine such witnesses, and providing that they shall not be bound by their answers.

" '*The people of the State of Michigan enact:*

" 'SECTION 1. Hereafter in any suit or proceeding in any court of law or equity in this State, either party, if he shall call as a witness in his behalf the opposite party, employee or agent of said opposite party, or any person who, at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and that the party so calling and examining such witness shall not be bound to accept such answers as true.'

"That is the end of section 1. And in so calling said witnesses, or any of them, the plaintiff is not bound by the answers given by said witness or witnesses, nor is said plaintiff bound to accept the answer or answers of any one or ones of said witnesses as being true answers, and the plaintiff may accept such part or parts of the answers of any one or ones of said witnesses as the plaintiff elects so to accept, and, so far as the plaintiff is concerned, such of said answers, if any, which the plaintiff does accept as being true, are for the consideration of the jury the same as any other facts or circumstances in the case."

With reference thereto, counsel for appellant says in his brief:

"While the plaintiff is not bound to accept the answers as true, if the answers stand uncontroverted, they stand as facts in the case, and just exactly with

the same force and effect as if they had been sworn to by any other witness in the case, admitting, of course, the jury's right to consider the credibility of such witnesses, but the judge said that the plaintiff need not accept anything which was adverse to it, and that they were only to consider such things as were favorable to the plaintiff. In other words, only consider such things as the plaintiff did accept."

It is also claimed that by this instruction the trial court swept aside and eliminated from the case some of the most valuable testimony of the defendant as to the capacity of the pressure pump, as several witnesses called under this statute had given testimony with reference thereto.

It is true that this instruction of the court, taken by itself, in explaining to the jury the effect of the statute, was somewhat incomplete and confusing. However, the court did not say that any testimony that was favorable to the defendant, and which plaintiff did not accept, was not for the consideration of the jury, and in this connection the following instruction of the court given to the jury should be considered:

"(4) And I further instruct you that any state-ments or testimony submitted by the defendant, or any employee or former employees of the defendant called by the plaintiff as to the condition of this pump during the entire four years mentioned in the plain-tiff's declaration, is not necessarily to be taken as true, but should be considered by you, and you are to deter-mine the condition of this pump during said period and the question of whether or not it did actually maintain the pressure claimed by the defendant by all of the facts and circumstances and testimony left in this case for your consideration."

In our opinion, this instruction, taken in connection with the other, made it clear to the jury that they must consider all the testimony in the case, and there was not eliminated from their consideration such testimony favorable to the defendant, given by witnesses called

under the statute, which had not been accepted by the plaintiff. See *Jones* v. *Railroad Co.*, 168 Mich. 14 (133 N. W. 993) ; *Johnson* v. *Carbide Co.*, 169 Mich. 659 (135 N. W. 1069).

The court charged:

"If you believe that these taps or connections did exist ahead of the meter, and that the water passing through these pipes was not registered by the meter, then I instruct you, gentlemen of the jury, that any water taken through such pipes by the defendant company was taken wrongfully and unlawfully, and your verdict should be for the plaintiff, the city of Kalamazoo, in the amount of the value of the water so wrongfully taken, to be determined by you, as I shall hereafter instruct you, even if the defendant's officers, directors, and stockholders, any or all of them, did not know water was being so used by the defendant."

And it is contended that no verdict should be rendered against the company unless the fact of the wrongful and unlawful taking of the water is brought home to some officer of the corporation. In this case, there being evidence to warrant the jury in finding that the defendant established the sham pressure pump and the improper openings on the sprinkler system, it is not unreasonable to assume that the wrongful means were installed to take the plaintiff's water without metering and paying for it. By so doing, the defendant invited its employes to use the unlawful means for the unlawful purpose. As is said by counsel in his brief:

"This is a case of the employee using the means furnished by the employer to accomplish an unlawful purpose in furthering the master's interests, and out of which nobody but the master received the benefit."

Cooley, in his work on Torts (3d Ed.), vol. 2, p. 1017, says:

"The master is liable for the acts of his servant, not

only when they are directed by him, but also when the scope of his employment or trust is such that he has been left at liberty to do, while pursuing or attempting to discharge it, the injurious act complained of. It is not merely for the wrongful acts he was directed to do, but the wrongful acts he was suffered to do, that the master must respond."

See, also, 31 Cyc. pp. 1582-1585.

There was no error in the charge as given.

If entitled to damages (and a reading of this record is convincing that the jury were warranted in finding that unmetered water was taken by the defendant's servants and employees for the use and benefit of the defendant, for which the defendant did not pay), the damages should be the full value of the property at the time of conversion, together with interest on that value from that time. It is clearly impossible for the plaintiff to prove, with absolute certainty, the amount of water the defendant converted, and this want of certainty is properly attributable to the fault of the defendant. The claims made by the plaintiff were for the highest amount of water which could possibly have been used by the defendant by means of the unlawful taps and by-passes. The defendant sought to reduce this by attempting to show that such an amount of water could not have been and was not taken from the city's mains as alleged. Taking the water in the way it did, the defendant must bear the risk of uncertainty thus produced. *Allison* v. *Chandler*, 11 Mich. 542; *Gilbert* v. *Kennedy*, 22 Mich. 117; *Krumenaker* v. *Dougherty*, 74 App. Div. (N. Y.) 452 (77 N. Y. Supp. 467).

We are satisfied that a large amount of unmetered water was taken by the defendant, and, while the amount taken must be necessarily an approximation based on the test made by the Hersey meter and all the other facts and circumstances shown in the case,

we are not convinced that the amount found by the jury is excessive.

During the closing argument of plaintiff's counsel an exception was taken by defendant's counsel, as follows:

"*Mr. Irish:* I will take an exception to counsel talking about stealing water.

"*The Court:* I think the argument may proceed that has been indulged in by the other side as a matter of law. I will charge the jury about its weight.

"*Mr. Irish:* An exception."

The trial court, in charging the jury with reference to this, said:

"The jury are instructed that, under the declaration as it now stands, they are not to consider the question as to whether the Standard Paper Company or any of its agents have been guilty of stealing water. There can be no stealing or larceny of the water, unless the elements of larceny or stealing are charged in the declaration and proven in this case. No larceny is charged or proven in this case. I will not say proven."

An examination of the excerpts from the arguments of defendant's attorneys shows that the statement of the trial judge is justified, and it appears that language with reference to the stealing of water had been used by the attorneys for the defense in their argument. Although the question of the stealing of the water was not in the case, having been made prominent and commented upon by defendant's attorneys in their arguments, there was no prejudicial error in plaintiff's attorney's using the same language in his reply. *People* v. *Swift,* 172 Mich. 473 (138 N. W. 662). We are not satisfied that the argument contributed to the result. *Houser* v. *Carmody,* 173 Mich. 121 (139 N. W. 9).

Criticism is also made that the trial judge unduly emphasized plaintiff's claim in his charge, but a care-

ful reading of the entire charge is satisfying that the questions in issue were fairly submitted to the jury.

Finding no prejudicial error in the record, and being convinced that the verdict finds support in the evidence in the case, the judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.