## MOTOR WHEEL CORPORATION v. RUBSAM CORPORATION. *
### No. 7175.

Circuit Court of Appeals, Sixth Circuit.
July 3, 1937.
As Modified on Denial of Rehearing
Oct. 12, 1937.

Floyd C. Williams, of Cincinnati, Ohio, and C. R. Taber, of Lansing, Mich. (Shields, Ballard, Jennings & Taber, Byron L. Ballard, and Carroll R. Taber, all of Lansing, Mich., and John Weld Peck, of Cincinnati, Ohio, on the brief), for appellants.

Benjamin Kleinstiver, of Jackson, Mich. (Whiting & Kleinstiver, of Jackson, Mich., and Justin W. Macklin, of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a judgment on a jury verdict in an action for royalties claimed to be due under a patent license contract. The parties are engaged in the manufacture of wheels and wheel parts for motor vehicles. Appellee is the owner of certain patents on mechanisms which aim to secure the proper centering of demountable rims on the felloe or that part of the wheel rim which is supported by the spokes. When the demountable rim came into use, bolts, nuts and clamps were used to affix it to the wheel, and if not evenly tightened, the wheel was out of proper alignment, and at high speed would wobble, or "shimmy." This resulted in unusual wear on the tire, and created hazards in fast driving which were accentuated by the use of the balloon tire, with its relatively wide rim and small diameter. Appellee claims to have solved this problem

*Writ of certiorari dismissed 58 S.Ct. 369, 82 L.Ed. ——.

through its centering principle patents by two methods, one in which clearances were sheared off the front flange of the felloe, the other the method of the "depression type," in which the outer flange of the felloe was of lesser diameter than the inner flange and arcuate depressions were stamped inwardly in the rim. The sheared clearance patent is not involved in this case, which concerns only the centering principle patents disclosing depressions in the rim.[1]

For some years prior to the institution of this suit appellee's "bulge felloe" and "floating clamp" patents (Nos. 1,403,439 and 1,601,455) had been the subject of a written license between the parties. Payment of all royalties due thereunder have been made. In the instant action appellee sued for royalties under its so-called "centering principle" and clearance patents (Nos. 1,395,362, 1,-576,225 and 1,576,226). It set forth (1) that the agreed royalty was two cents per wheel; (2) an implied contract together with a prayer for reasonable royalty, and (3) certain of the common counts. During the trial, after appellant had moved to require appellee to elect, appellee abandoned the common counts, and claimed that an express contract was declared on in each of the other two counts, but that the first count set forth an agreed royalty, namely, two cents per wheel, and that the second count set forth that the royalty was undetermined, and therefore a reasonable royalty was due.

Appellee admitted in its pleadings that it had entered into a license contract covering the clearance patents, but claimed that it was to pay no compensation for their use so long as it paid royalty under the bulge felloe and floating clamp patents.

Appellant's principal contention is that the trial court erred in failing to require appellee to elect between two counts of the declaration,[2] and in denying its motion for directed verdict.

Appellant's first contention is premised on the proposition that the court denied its motion to require appellee to elect, and charged the jury upon both an express and an implied contract. But this is not the case. Appellee abandoned all theory of implied contract. The court expressly charged the jury not to find for appellee unless an express contract existed. On the question of royalty, the court left it to the jury to determine whether the contract provided for a royalty of two cents per wheel, as alleged in the first count, or whether a reasonable royalty arose by implication from the conduct of the parties, or whether the contract provided for a free license for the use of these particular patents. The submission of such issues is not error under Michigan law, which governs here. Way v. Root, 174 Mich. 418, 140 N. W. 577; In re Moon's Estate, 219 Mich. 104, 188 N.W. 457; Brandt v. Munz, 250 Mich. 172, 229 N.W. 463; Board of Supervisors v. Bennett, 185 Mich. 544, 545, 152 N.W. 229, 153 N.W. 814; City of Kalamazoo v. Standard Paper Co., 182 Mich. 476, 148 N. W. 743. As appellee elected to proceed on the theory of an express contract and the

[1] For a full discussion of these patents, see General Motors Corporation v. Rubsam Corporation, 65 F.(2d) 217 (C.C.A. 6).

[2] In the first count of the declaration appellee alleged that it granted "a license to defendant to make, use and sell the said devices patented and included in Patents No. 1,395,362, in combination with Patents Nos. 1,576,225 and 1,576,-226, on the same basis of royalty embodied in the license granted to General Motors Corporation, dated May 4, 1923, viz., one and one-half cents (1½¢) for each wheel of a size applicable to a car of the touring type weighing less than two thousand pounds, and at the rate of two cents (2¢) for each wheel applicable to cars of greater size."

In the second count appellee averred that appellant "has manufactured and/or caused to be manufactured, purchased and sold and/or used with the consent and knowledge of this plaintiff and an ex-pectation of receiving reasonable compensation therefor, the combination of the patents described in Rubsam Patent No. 1,395,362, and Rubsam Corporation Patents Nos. 1,576,225 and 1,576,226 from said 20th day of February, 1926 to this day, and has neglected and refused to pay this plaintiff any royalty and compensation therefor, notwithstanding the large savings made to said defendant in the manufacture and sale of said product so as aforesaid, resulting in lost profits to this plaintiff, whereby plaintiff avers that by implication of fact and law said defendant agreed to pay to this plaintiff a reasonable royalty and compensation for the value and benefit of the license it has exercised in the manufacture, sale, purchase and use of all the wheels and wheel parts by defendant in accordance with plaintiff's inventions aforesaid, including defendant's profits and plaintiff's damages arising therefrom."

court adopted this theory in its charge, appellant's first contention has no merit.

■ On the question of directed verdict appellant contends that the court in effect left it to the jury to determine the scope of the patents. The interpretation of a patent is a question of law for the court. Singer Mfg. Co. v. Cramer, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Hurin v. Electric Vacuum Cleaner Co., Inc., 298 F. 76 (C.C. A.6); Edward G. Budd Mfg. Co. v. C. R. Wilson Body Co., 21 F.(2d) 803 (C.C.A.6). In a royalty case the contract is limited by the scope of the patents, and the court must construe them. Cf. Western Electric Co. v. Robertson, 142 F. 471 (C.C.A.2); General Motors Corporation v. Swan Carburetor Co., 88 F.(2d) 876 (C.C.A.6). Here the court ruled upon the scope of the patents. It held, and so charged the jury, that the invention was limited to "a vehicle wheel consisting of a demountable rim seated upon a wheel felloe with circumferentially spaced apart bearing surfaces between the rim and the felloe where the internal diameter of the demountable rim at the bearing surfaces is no greater than the external diameter of the wheel felloe at the bearing surfaces."

■ The amount of the verdict is the exact amount due at two cents per wheel upon wheels manufactured by appellant. Substantial evidence exists that it was agreed that these patents should be used at a royalty of two cents per wheel. Rubsam, appellee's president, testified positively to the making of such a verbal agreement. He said that Harper, appellant's president, persuaded him not to give a license on these "centering principle patents" to two other prospective licensees, because, Harper said, "If you want to go along with us, it will be greatly to your advantage." Rubsam continued: "And I believed him, and so I said, 'All right, if you pay the royalty which we get from the General Motors on the clearance type, and that is a special royalty, that is not the same thing as the royalty you have on the bulge and clamp type, if you pay that royalty you can have it. * * *'" There was some more negotiation between Rubsam and Harper as to the question of Rubsam's leaving other connections. Rubsam said Harper did not insist on that, and that he said, "All right, I pay the royalty whenever we use it." To the question, "What royalty?" Rubsam answered, "Clearance royalty at the same basis as the General Motors * * *."

This testimony is denied by Harper, but it is corroborated by the fact that when Rubsam demanded royalty of Harper in September, 1928, Harper referred the matter to the secretary of his company and wrote Rubsam, "With reference to the discussion of our license with you, just as soon as Mr. Carlton and I can get together and check the details, will get in touch with you." There was no difficulty with reference to the payment of bulge and clamp royalties, and therefore this letter must refer to the royalties on the centering principle patents. The correspondence does not show that at the time of this demand appellants made any claim of free license, or that the royalty of two cents per wheel had not been agreed upon. Rubsam said that a later demand for royalties on wheels for Nash and Essex was made, and again Harper said that he would look into it. Consistent with Rubsam's testimony is the fact that a license under patent No. 1,395,362 had been granted by appellee to General Motors Corporation, to last during the life of the patent, at one and one-half cents per wheel and two cents per wheel respectively, depending upon the weight of the automobile. This license provided that appellee "shall grant to licensee any more favorable terms of royalty that may be extended to other persons during the life of this agreement." In view of this contract with General Motors Corporation it may reasonably be doubted that appellee would give free use of these clearance patents to appellant because of the royalties paid on the bulge and clamp patents. Appellant's theory of free license is seriously discounted by the admitted fact that it tried to secure a license contract for these patents at one cent per wheel, which was a special royalty to be used only in making wheels for the Ford Motor Company.

■ The remaining question is whether substantial evidence was presented that appellant's wheels incorporated the disclosures of appellee's patents. Rubsam positively states that Harper, when taxed with using the clearance type construction admitted such use. In the correspondence which followed this conversation, Harper did not deny the use of the patents, and he specifically said in the letter of September 28, 1928, that he would have Carlton check into the royalties. A comparison of the pat-

ents with appellant's wheels and felloes substantiates the finding of use. In the specifications of clearance patent No. 1,576,225, it is stated that the outer periphery of the fixed rim is substantially the same diameter as the contiguous portion of the inner periphery of the demountable rim. The patent also states: "When the demountable rim, in being placed on the wheel body, has been swung into substantial alignment therewith, the three fixed supports 16, integral with the fixed rim, will fit as snugly as possible under the necessary commercial variation."

In No. 1,576,226, the specifications state that "these indented portions 16 are designed to contact with the periphery of flange 11." The object of the patents was to secure a concentric positioning of the demountable rim around the felloe or fixed rim. The patents expressly allowed for commercial variations. Appellant's wheels and felloes follow substantially the design of these "centering type" patents. They use the bearing surfaces and they exhibit a very close fit. Appellant's former chief engineer said, "it is just good manufacturing practice to make two parts that go together fit as closely as possible." Appellant considered its tolerances very close.

It is not denied that appellant's wheels include the depressions described in the patents, and appellant's former chief engineer states that these depressions were used because they contributed "toward a truer mounting." Certain blue-prints of appellant's wheels, introduced in evidence, indicate a rim contact so close to the felloe that the ink of the drawings runs together. While the relative dimensions of rim and felloe in appellant's wheels are claimed to be shown in certain blue-prints and mathematically to exclude the possibility that there was any contact between rim and felloe, these blue-prints stated "for further changes see details and present practice." The record shows that these dimensions varied according to different factors, such as variations in the thickness of the rim metal, the sagging of the metal at the base of the depression when punched in by the punch press, and the painting and galvanizing or enameling of the rim and the felloe. The dimensions given on the blue-prints did not allow for these factors, which diminish the inner diameter of the rim at the depressions where the blue-prints showed at the outside a space of only a few thousandths of an inch. For practical purposes, in appellant's wheels the rim rests upon the felloe.

■ The court did not err in submitting the case to the jury. The evidence was conflicting, and since there was substantial evidence that appellant was using appellee's devices, and that appellant agreed to pay a two-cent royalty for such use, the verdict returned was not contrary to the instructions of the court. Also appellant's objection that the verdict was returned for royalties on felloes which were manufactured without rims has little weight, as the record shows that they were obviously intended by their construction to be part of a complete wheel and rim assembly embodying Rubsam's invention. Cf. Sandusky Foundry & Machine Co. v. De Lavaud, 274 Fed. 607, 610 (C.C.A.6).

The judgment is affirmed.

