### HOUSER v. CARMODY.

1. DAMAGES—PLEADING—BREACH OF PROMISE OF MARRIAGE.
   General allegations of damage are sufficient to warrant a recovery for physical and mental suffering resulting from breach of promise of marriage.

2. Appeal and Error—Exceptions—Saving Questions for Review.

An exception to the ruling of the trial court in passing on the admissibility of evidence is necessary on error.

3. Evidence—Witnesses—Impeachment—Deposition.

Testimony tending to show unusual or suspicious conduct of a witness whose testimony was taken by deposition was properly received in evidence, in an action for breach of promise, as affecting the credibility of the witness; since he was not present in court and his conduct could not be observed by the jury.

4. Same.

Where the witness claimed to have been unduly intimate with plaintiff, and on his cross-examination a foundation was laid for impeachment by asking witness if he had bought a ring for plaintiff of a jeweler to whom he made disrespectful remarks concerning plaintiff, the jeweler was correctly permitted to give testimony in contradiction of the witness' denial, and plaintiff to show that she had been notified about the remarks made by the witness and had asked for an explanation and ceased to associate with him afterwards.

5. Breach of Marriage Promise — Instructions to Jury — Seduction.

In an action for breach of promise of marriage and seduction, wherein it was claimed by defendant that plaintiff had been unchaste after the marriage contract was alleged to have been made, defendant denying making such a promise, the court properly refused to charge, as requested, that such conduct constituted a defense to the action, if proved, and rightly instructed the jury that it could only be considered in mitigation of damages.

6. Same.

Error was not committed by the trial court in further charging, as requested by defendant, that the claimed misconduct of plaintiff would be an excuse for breach of the contract only if defendant learned of the misconduct of plaintiff and because of it refused to marry her, but where, on being advised by defendant's counsel that he did not make any such contention, the court corrected the inadvertence and left the evidence to be considered in mitigation of damages only.

7. Same.

The court was also correct in charging the jury and was supported in the same by her testimony, that if the jury found after an admitted lapse from virtue she had retrieved her

character and led a correct life until defendant seduced her under promise of marriage, she could recover.[1]

8. SAME—CHARGE.

An erroneous assumption of the court made in charging the jury, corrected at the instance of defendant's counsel and again made, but passed unnoticed, *held*, not to have misled the jury.

9. SAME—NEW TRIAL.

A new trial is only authorized on the ground of newly discovered evidence if the moving party exercised due diligence in attempting to secure it.

10. SAME—TRIAL—CONDUCT OF COUNSEL.

Alleged objectionable and impassioned argument is not ground for reversal, unless it clearly appears that the argument was unwarranted by the evidence and probably contributed to the result: plaintiff's attorneys were entitled to comment on defendant's income, and amount of property and on plaintiff's loss of social position, luxuries, etc.

Error to Berrien; Des Voignes, J. Submitted April 5, 1911. (Docket No. 18.) Decided December 17, 1912.

Assumpsit by Mary Houser against Thomas Carmody for breach of promise of marriage. Judgment for plaintiff. Defendant brings error. Affirmed.

*Gore & Harvey*, for appellant.

*Cady & Andrews* (*Chas. E. Sweet*, of counsel), for appellee.

McALVAY, J. This was an action for damages for breach of promise to marry and seduction, in which plaintiff recovered a substantial judgment. The case is before us for review upon writ of error.

The proofs show without dispute that plaintiff was an unmarried woman about 27 years old, employed as a telephone operator at Watervliet, Berrien county, and lived

---

[1] As to evidence of character for chastity in action for breach of promise, see note in 14 L. R. A. (N. S.) 748.

On the question of aggravation of damages in breach of promise case by seduction, see notes in 4 L. R. A. (N. S.) 616; 36 L. R. A. (N. S.) 388.

For necessity of averring seduction in order to recover therefor, see note in 33 L. R. A. (N. S.) 702.

with her brother-in-law's family; that defendant was an unmarried man of considerable property, 45 years old, who owned and conducted a drug store separated from the place where the plaintiff lived by an alley; that defendant lived in apartments over this drug store with his mother and sister; that, after they became acquainted, defendant paid considerable attention to her, going to social entertainments with her, and taking her riding in a buggy quite frequently evenings; that they became sexually intimate; and that this resulted in the pregnancy of plaintiff.

The claim of plaintiff was, and proof was offered tending to show: That some time after they became acquainted they began to keep company together in March, 1907. This continued until February, 1909, when, riding with her one evening, he first made a proposition of marriage, and asked her to think the matter over, and agreed to see her some evening during the week. He came to see her several times soon afterwards, each time talking with her relative to marriage, which finally resulted early in the month of April, 1909, in a mutual agreement to marry. That soon after their engagement defendant told her of his life, especially his relations with women, and how he regretted the fact, and said that it would be better for both to know each other's faults. That she then told him she had a secret she would tell him later. This she did within a few days, confessing that she had once gone astray, and had given birth to a child (the details of which confession are not material). That he had said this did not change his feelings towards her, but that he thought all the more of her for telling him. She testifies: That they discussed the matter of an engagement ring; that later she finally yielded to his persistent solicitation for sexual intercourse, in which he assured her that it was no sin because an engagement was as binding as marriage; that such relations continued for a time, and as a result in June she became pregnant. She informed him of this fact and requested an immediate marriage. He made

excuses that it was impossible because of the busy season, and finally took her to a doctor, who operated on her. She says that after her sickness the matter of the marriage was talked over, and it was determined that, when married, they would occupy the apartments over the drug store, which his mother and sister would vacate. She relates in detail what preparations she made relative to her wardrobe for the marriage, and also that he gave her some money to help buy it. The wedding was frequently postponed at the request of defendant. While buying some of her wedding things, she had told of her expected marriage, and had spoken of it to a few persons. Defendant came to her July 30, 1909, and accused her of making the matter of their marriage public, and then said for that reason he would not marry her. She pleaded with him to no effect, begging him to keep his promise. She claims that as a result she became sick and under the care of a physician for several days. She wrote him a letter September 11, 1909, which he failed to produce upon the trial, although requested, in which she apologized for telling anything concerning the marriage; that she told it because she was so happy over it. He did not answer this letter. She met him for the last time on the Saturday following, and during the interview he said: "What do you want to settle this affair? What do you want me to do?" Her testimony is: "Tom, there is only one thing for you to do, and that is to keep your promise." He replied: "I will never marry you." And they parted.

Defendant denied that he ever promised to marry plaintiff, or that thereafter, under such promise, he succeeded in having carnal relations with her, but that such relations were mutual and freely entered into and encouraged by plaintiff. By his notice under his plea and by his testimony he admits these relations, and admits that conversations of a general character relating to marriage were had between them; that the parties never reached any agreement as to the time or place of marriage, and that there never was any definite contract of marriage between

them; that, after she related to him her lapse from virtue, he discontinued visiting her. He also admitted that he gave her money from time to time amounting to $30, but denied that it was for the purpose of purchasing a wedding outfit. He admitted that she notified him of her condition of pregnancy, and that afterwards he went to a doctor in the village of Hartford, and made an appointment for her; that the next night, June 29th, he took her to the doctor's office, driving her across from Watervliet with a horse and buggy. He paid the doctor $25. His testimony indicates clearly the purpose of the visit. He claims, however, that it was done at her request. A short time after this trip he met her in the alley back of his drug store, when she told him she was "all right except certain pains," and for these he gave her some medicine. He says that he saw her on August 15th in the alley, and went with her upstairs, where he accused her of telling that they were engaged to be married. This was his last conversation with her except a few words later about a letter. The result of this trial was a verdict and judgment against defendant. A motion for a new trial was made by him, and denied. He has brought the case to this court upon a writ of error for review, and asks a reversal. The errors relied upon and urged before this court will be considered.

Several of these assignments of error relate to rulings by the court upon the admission and rejection of testimony.

Defendant objected to questions asked plaintiff on her direct examination as to her condition immediately after defendant left her on the night he told her he would not marry her, on the ground that it was not in his presence, and, if to show damages for injury to her feelings, not admissible because not covered by the declaration. The court permitted the witness to answer the question. The damages alleged in the declaration were in the general form. The plaintiff was testifying at the time as to her condition immediately after the defendant had broken the marriage agreement, and the testimony tended to show

her physical prostration, she being scarcely able to rise from her bed and admit her sister, and it was necessary for her to be helped into bed again; that she was unable to rise the next morning, and a doctor was called who attended her for three days, she being confined to her bed. The objection was without merit. This court has held that, under a declaration similar to this, plaintiff can recover as compensatory damages, among other things, for mental suffering and injury to health occasioned by the breach of the contract in a proper case. *Goddard* v. *Westcott*, 82 Mich. 180, 188 (46 N. W. 242).

The next assignment of error is upon the ruling of the court in refusing on redirect examination to allow defendant to answer the question, '' How did she come to build the house ? '' Plaintiff had testified that they were to be married late in the year, and would live in the apartments over the defendant's drug store, where his mother and sister then lived with him; and on cross-examination defendant had testified that his mother was building a house into which she moved in December. Defendant immediately was permitted to testify:

'' My mother is about 75 years old. Her health is not very good. She is very feeble. She got from the ground to her rooms over my store by walking up a long flight of stairs.''

The testimony was not excluded.

The next assignment of error is not supported by an exception to the ruling of the court, and requires no discussion.

Defendant introduced in evidence the deposition of a witness named Mast, taken before a justice of the peace at South Bend, Ind. This witness was a barber, who three years before lived in Watervliet, and was acquainted with plaintiff. His direct examination was very brief, and consisted simply of a few preliminary questions, and the statement that he had been carnally intimate with plaintiff. On cross-examination he could not give the time, place, or circumstances of the claimed occurrence, or

whether it was repeated, and remembered nothing at all except the claimed fact of intercourse. At the time of taking this deposition attorneys for both sides were present, and the attorney who represented plaintiff was called as a witness upon this trial, and was permitted, over the objection of defendant's counsel, to state the circumstances which occurred at this time, particularly the conduct of witness Mast and defendant, showing that he went out and had an interview with defendant for 15 or 20 minutes, and later, after he was sworn, defendant seated himself near the witness, which was objected to by counsel for plaintiff as improper, when defendant was told by his own counsel to change his seat; that Mast then whispered to defendant, who announced that before he testified Mast desired to speak with defendant's attorney, and before he testified they withdrew to the rear of the hallway where they remained for a considerable time before he returned to testify.

The record shows that upon the trial, immediately after this deposition was read in evidence, defendant was recalled as a witness in his own behalf, and upon his cross-examination he testified at length relative to the Mast deposition; that he went to Elkhart and brought Mast back with him to South Bend, according to a previous understanding, where he talked with the witness in the main room and where the testimony was to be taken and in the hall and with his attorney, during which conversations, which caused considerable delay, Mast asked defendant and his attorney if he could be prosecuted criminally if he testified against this woman; that defendant told him he thought not, but his attorney said that he might be prosecuted, and that is what he hesitated about—he did not wish to be punished for it afterwards. This witness Mast was not before the court, and the testimony objected to as to what occurred when the deposition was taken was permissible as bearing upon the credibility of the witness. *New Jersey Express Co.* v. *Nichols,* 33 N. J. Law, 434 (97 Am. Dec. 722).

This deposition of witness Mast upon cross-examination shows that foundation was laid for impeachment. It related to a ring which it was claimed on the part of plaintiff he procured from a jeweler at Coloma, where Mast resided, stating that he would take it to plaintiff, and made disrespectful remarks in connection with it concerning her; that the jeweler sent word of what Mast had said to plaintiff, who, when Mast came, called his attention to it, and demanded an explanation. Mast denied getting the ring or making the remarks claimed, but admitted that plaintiff said something relative to an explanation of his disrespectful remarks. The jeweler was permitted, over objection, to testify that Mast got the ring and made the statements claimed, and that the former sent word to the plaintiff as to what he said. Plaintiff testified that she received such word from the jeweler, and, when she saw Mast, demanded an explanation from him of his disrespectful remarks, and never went with him again. An exception was taken to the ruling of the court in receiving the testimony of the jeweler, but none was taken to the testimony of plaintiff. The court was not in error in admitting this testimony for the purpose of impeaching Mast.

Exceptions were taken to the refusal of the court to give defendant's requests to charge 6, 7, and 8 in the manner and form as requested. The record shows that the trial judge marked these requests as "covered," meaning given in substance in his charge to the jury. This is not disputed by defendant's counsel. An examination of the charge of the court as given shows that these requests were given in substance in this charge, and the refusal to give them in the exact words of counsel, as is contended should have been done, was not erroneous.

Error is assigned upon the refusal of the court to give the following request to charge proposed by defendant:

"If the plaintiff had carnal intercourse with George Mast, as sworn to by him, plaintiff cannot recover."

This was given by the court, modified as follows:

"If you find defendant refused to carry out the promise for that reason."

This request, or its substance, was repeated by defendant's counsel when the court was giving the main charge to the jury as follows:

"That, if the defendant learned after suit was brought that the plaintiff had had carnal intercourse with another man, he had a right, as matter of law, to break the contract, and as a matter of law such conduct on the part of plaintiff *ipso facto* breaks the contract."

This request is based upon the deposition of the man Mast hereinbefore discussed, and was requested, as above given, in its modified form by defendant's counsel while the court was charging the jury, to which the court said, "The court does not take that view of it," to which defendant excepted. The court proceeded:

"In following that I will give this: Where it is found that plaintiff had sexual intercourse with another person than defendant before the alleged breach, and which was unknown to the defendant, the jury should consider that fact in mitigation of damages only, and that is based on *Sheahan* v. *Barry*, 27 Mich. 217, in a similar case."

Counsel for defendant was urging at that time, as is also contended for in his brief, that in this case, if the jury found as testified by Mast that plaintiff had had illicit intercourse with him, a verdict should be returned against plaintiff. The case cited and relied upon by the court in allowing the jury to consider in this case the testimony of Mast only as bearing upon the question of mitigation of damages supports the conclusion of the court, and, although some authorities state that they are not in accord with this Michigan case, it is apparent that they do not apprehend the distinction made in the case cited. In *Sheahan* v. *Barry*, *supra*, defendant requested the court to charge as the trial court charged in this case, that the matter of such incontinence on the part of plaintiff should be considered in mitigation of damages (which the

court granted), and "that the plaintiff should recover not
more than merely nominal damages" (which the court
denied), and upon the argument claimed that there could
be no recovery at all. The court in that case, speaking
through Mr. Justice CAMPBELL, said:

"But we think the ruling was correct. There was evi-
dence introduced attempting to prove plaintiff's incon-
tinence with another about the time of the alleged seduc-
tion, and after the promise of marriage. There was also
evidence from which it was claimed the jury might infer
previous incontinence. It was not claimed that the en-
gagement had been broken off on account of a discovery
or suspicion of such misconduct. * * * If a person
who has promised marriage discovers that his proposed
wife has been guilty previously of unchaste conduct,
which has been concealed from him, he may unquestion-
ably, if his own conduct has been fair, break off the en-
gagement, and be legally justified. But where he breaks
it off on some other insufficient ground, or for no reason
at all, and where he has himself been guilty of seducing
her under and by means of the marriage promise, we can
see no reason why she should not have an action against
him. No authority cited covers such a case and we think
it would not be proper to take it from the jury."

This rule established in *Sheahan* v. *Barry, supra,* has
never been questioned by this court.

The distinction which this court made in that case was
that the rule contended for did not apply where the de-
fendant had been guilty of seducing the plaintiff under
and by means of the marriage promise. In the instant
case the reasoning given in *Sheahan* v. *Barry,* against the
general rule contended for, applies with much greater
force, for the reason that the defendant denied that any
contract to marry was ever entered upon between the
parties, and that the relations of the parties as to inter-
course was voluntary and without reference to or reliance
upon any promise to marry. The cases relied upon on
the part of the defendant in support of his contention are
cases where the existence of the contract to marry was not
disputed, and the unchastity, either before or after the mar-

riage contract, was held to be a complete defense to an action for breach of promise, unless such unchastity has been waived by the defendant. We think that the weight of authority sustains such a proposition of law; but the instant case is clearly distinguishable from those cases, as already pointed out, in that an agreement to marry is denied. The jury were allowed in the instant case to consider the later claimed unchastity with Mast in mitigation of damages only, and, as to that which plaintiff confessed, must have found that defendant had waived it. The court was not in error in limiting the consideration of the Mast testimony by the jury to the question of mitigation of damages, and the modification of the request complained of as first given, in view of what the court said relative to this matter later, could not have prejudiced defendant.

Errors are also assigned because the court gave two requests to charge presented by plaintiff, relative to her claimed illicit relations with Mast, as follows:

"Before you can consider the testimony of the witness George Mast as a reason for the breach of the marriage contract, if you find there was such a breach, you must also find that defendant learned of this fact and refused to carry out the promise by reason of it."

This request was given following defendant's twelfth request, which we have already considered, and, after giving it, counsel for defendant had stated to the court that in fact such relations with Mast were not known to defendant until after the commencement of suit. What next occurred has already been stated, including the oral request by defendant's counsel, which repeated and enlarged upon the twelfth request. The court, however, accepted the correction that the evidence showed the facts disclosed by Mast's deposition were learned by defendant after suit was commenced, and proceeded at once to give the portion of the charge already discussed, which instructed the jury to consider such testimony in mitigation of damages only, thereby correcting whatever error had by inadvertence been made, leaving this branch of the

case properly submitted to the jury, as we have already determined in discussing the error assigned by defendant upon the refusal to give his request upon the same matter.

Another request of the plaintiff was given to the jury by the court to the effect that notwithstanding plaintiff's lapse from virtue, if the jury found that she had retrieved her character and led a correct life thereafter until defendant, under his promises and by his solicitations, induced her to have intercourse with him, such acts would amount to seduction. Defendant does not question that this request correctly stated the law, but contends that there was no evidence in the case tending to show that she had returned to the path of virtue. Upon this proposition counsel for defendant is mistaken. A fair inference from a reading of the entire testimony of plaintiff is that for about three years after the birth of her child she led a correct life up to the time of her intimacy with defendant. No error was committed in giving this request.

Errors are also assigned upon certain portions of the charge of the court, wherein it is claimed that the court assumed that the confession of plaintiff to defendant relative to her illegitimate child was made before the contract to marry was entered into. It appears that the court made such a statement, but, as already stated, he was at once corrected by counsel for defendant, which correction was assented to by plaintiff's counsel and must have been so understood by the jury. The same mistake occurred somewhat later in the charge, but no notice was paid to it by either counsel, and the attention of the court was not called to the matter. The incident of the correction was fresh in the minds of everybody. If the defendant expected to rely upon this as error, the court should have been given an opportunity to make the correction. The jury could not have been misled.

Error is assigned upon the denial by the court of the motion for a new trial, based upon very many reasons. It is only necessary to consider the ground of newly dis-

covered evidence. The court, in the reasons given for refusing to grant a new trial, said, upon this matter:

"The newly discovered evidence offered now was known to defendant before the trial of the case, except the two witnesses, Julia Walsh and Mary Hutchins, both of whom reside in the same town as does defendant; one being his cousin. There is no showing of diligence on defendant's part, and his affidavit in support of the motion fails to show that he is entitled to a new trial by reason of this."

Under the decisions of this court in *Canfield* v. *City of Jackson*, 112 Mich. 120 (70 N. W. 444), and *Burke* v. *Electric Co.*, 147 Mich. 172 (110 N. W. 524), an examination of the affidavits in support of this motion satisfies us that defendant failed to make a sufficient showing to entitle him to a new trial, and that the court was not in error in denying the motion.

There remains for consideration the further assignment of error upon the claimed prejudicial argument of counsel for plaintiff in his closing argument to the jury. We have examined the excerpts from such argument, to which exceptions were taken, and, although we find that counsel in the heat of argument used very vigorous language, when the character of the case is considered, all the testimony bearing upon the conduct of the defendant and admissions of his relations with plaintiff, his criminal conduct in securing and paying for a criminal abortion upon her, we can understand the pressure under which counsel in the case were laboring.

Many portions of the argument excepted to were strictly legitimate. The defendant in the case testified that he was worth about $25,000, was doing a fine business, which brought him in besides his salary a net income of $2,500 a year, and it was proper for the jury to consider the matter in arriving at the damages plaintiff was entitled to in case of a recovery. Her loss of social position and the luxuries, comforts, and other things which are incident to the life of a woman who marries a man of means are properly

taken into consideration in a case of breach of promise to marry. The jury also, if the testimony of plaintiff relative to her seduction by defendant was found to be true, was entitled to give her damages on that account. The major portion of these objections referred to are of this character.

There is another objection relative to what was said by counsel as to how much the deposition of Mast cost. Upon objection by defendant he said:

"I do not say it cost money. It may have. Such things do sometimes."

While we do not approve of this language, suspicion naturally attaches to this witness by reason of the circumstances disclosed at the taking of his deposition, his fear of a prosecution and the character of his testimony, which we have discussed, and also the circumstances that it was taken near the State line in Indiana, where the attorneys were required to attend, only 40 or 50 miles from the place of this trial, where it is apparent his attendance could have been procured.

The question is whether the language complained of in the argument to the jury was so extreme as to justify a reversal—whether the defendant has been prejudiced thereby. This court has said that it is not disposed to reverse cases because of impassioned arguments, unless it clearly appears that such arguments are unwarranted by the evidence, and probably contributed to the result. In view of the moderate amount of the verdict rendered by the jury and the abundant support in the testimony for such verdict, we are satisfied that the impassioned arguments of plaintiff's attorney did not work prejudice to defendant.

We do not find that any prejudicial error was committed by the court in this case, and the judgment of the circuit court is affirmed.

MOORE, C. J., and BROOKE, OSTRANDER, and BIRD, JJ., concurred.