FREEMAN v. BENNETT. (No. 1773.)

(Court of Civil Appeals of Texas. Texarkana. May 3, 1917. Rehearing Denied May 24, 1917.)

1. APPEAL AND ERROR ⊂⊃232(2)—RECORD—BILL OF EXCEPTIONS—SCOPE OF OBJECTIONS.

In an action for breach of marriage promise, where it appeared in the bill of exceptions that plaintiff testified without objection that she told third persons of her engagement to defendant, and that defendant's objection was to her testifying as to whom she made such statements, the appellate court is not called upon to determine whether the testimony that she made such statements was admissible and prejudicial or not.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1430, 1431.]

2. APPEAL AND ERROR ⊂⊃1050(1)—REVIEW —REVERSIBLE ERROR.

As it is permissible to show by the testimony of the plaintiff in a suit for breach of marriage promise that she had communicated the fact of her engagement to her family, it was not reversible error to allow her to testify that she had made such statements to her sister and stepmother and to other persons.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

3. BREACH OF MARRIAGE PROMISE ⊂⊃21—EVIDENCE—ADMISSIBILITY.

It was not error to permit plaintiff to testify that about all she owned "which could be called property," was a lot in a certain town.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30, 34.]

4. APPEAL AND ERROR ⊂⊃1058(3)—EXAMINATION OF WITNESS—HARMLESS ERROR.

If it was error to refuse to permit the defendant to prove by plaintiff on cross-examination whether she wrote him from a certain town that she was "going to work in the post office there September 1, 1915," or not, it was harmless, as defendant had testified to the same fact without contradiction, and such testimony would not have been inconsistent with her engagement to marry defendant in the fall, and would tend very remotely, if at all, to prove that she and defendant had not agreed to marry then.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4202–4204.]

5. BREACH OF MARRIAGE PROMISE ⊂⊃21—EVIDENCE—ADMISSIBILITY.

Where defendant testified that he did not know exactly when he "stopped associating" with plaintiff, but that he had "refused to go with" her on the occasion of a party on a day named, evidence that the person who invited him to such party requested him to accompany plaintiff to the party was immaterial, and properly excluded.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30, 34.]

6. BREACH OF MARRIAGE PROMISE ⊂⊃21—EVIDENCE—ADMISSIBILITY.

It was not error to refuse to permit the defendant to testify that in his candidacy for the nomination for county clerk in 1916 no issue was made against him, except to charges in this case, over plaintiff's objection, that the matter was immaterial and collateral.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30, 34.]

7. APPEAL AND ERROR ⊂⊃1058(2)—EVIDENCE —ADMISSIBILITY.

If it was error to refuse to permit the defendant, on cross-examination of a witness, to prove by the witness whether he had opposed the candidacy of his half-brother for the nomination of district attorney and helped defeat him because such half-brother was defendant's friend and supporter, such error was not reversible, since the only purpose of the testimony was to show ill feeling of the witness toward the defendant, and this was shown sufficiently by the witness' testimony that he fought defendant in his campaign for renomination as county clerk, felt ill toward him, and had voluntarily come from another county to testify as a witness against him in this case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4201.]

8. BREACH OF MARRIAGE PROMISE ⊂⊃21—EVIDENCE—ADMISSIBILITY.

Where a witness testified that he had received certain compromising letters from plaintiff, it was not error to exclude his testimony that he had exhibited the letters to an attorney, since it could add no strength to his testimony that he had received such letters, although plaintiff denied having written them.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30, 34.]

9. BREACH OF MARRIAGE PROMISE ⊂⊃21—EVIDENCE—ADMISSIBILITY.

The court should have excluded the statement of a witness that he had lost confidence in defendant because defendant in a conversation with him about the plaintiff after the birth of her child misrepresented some little things to him.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30, 34.]

**10. APPEAL AND ERROR ⬦1050(2)—PREJUDI-CIAL ERROR—EVIDENCE.**

Such statement was not prejudicial to defendant where the court told counsel that they would not take the time to try out such quibbles or go into the matter, and that it was immaterial, and hence in effect gave the jury to understand that the statement was not to be considered by them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4154.]

**11. APPEAL AND ERROR ⬦742(1)—BRIEFS—ASSIGNMENTS OF ERROR.**

An assignment of error, not accompanied by such a statement from the record as required by the rules for briefing cases appealed to the Court of Civil Appeals, is not entitled to consideration.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000.]

**12. BREACH OF MARRIAGE PROMISE ⬦35—INSTRUCTIONS — "BECAUSE" — "BY REASON OF."**

As the words "by reason of" have the same meaning as the word "because," an instruction, "If you believe from the evidence that plaintiff and defendant mutually contracted and agreed to marry each other and to become husband and wife, and if you believe that during the existence of such agreement to marry, if any, the defendant induced plaintiff, by reason of said promise and agreement to marry, if any, to yield her person to him and to have sexual intercourse with him, and that by reason of such sexual intercourse, if any, plaintiff became pregnant and gave birth to a child, then and in that event you are instructed that you may consider same in estimating plaintiff's damages for the breach of said agreement and contract to marry, if any, but if you find from the evidence that the defendant did have sexual intercourse with plaintiff, and that she became pregnant by reason thereof, yet the defendant would not be liable for damages for sexual intercourse, if any, and pregnancy, unless defendant had promised and agreed to marry plaintiff, and that such sexual intercourse, if any, was had during the existence of and by reason of such agreement and contract to marry, if any," was not subject to the objection that it in effect told the jury that it is legal and legitimate for an unmarried woman to engage in illicit intercourse with the man to whom she is engaged, and authorized them to find in plaintiff's favor for damages resulting from illicit intercourse during her engagement to appellant, without regard to the question of whether she was seduced or led from the path of virtue by reliance upon the alleged promise of marriage, as it did not authorize the jury, in determining the amount of their verdict, to consider the fact that plaintiff had become pregnant by defendant, unless they believed that he had induced her to yield her person "by reason" of his promise to marry her, but, on the contrary, expressly told them defendant would not be liable for damages for the consequences to her of sexual intercourse with him, unless he had promised and agreed to marry her and such intercourse was had during the existence of and by reason of such agreement and contract to marry.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 51.

For other definitions, see Words and Phrases, First and Second Series, By Reason of; Second Series, Because of.]

**13. BREACH OF MARRIAGE PROMISE ⬦34—EVIDENCE—SPECIAL ISSUE.**

Evidence *held* not to justify the submission of a special issue requested by the defendant, instructing the jury to find for him if they be-lieved appellee submitted her person to him because she loved him, and not because she relied on his promise to marry her.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 50.]

**14. TRIAL ⬦260(5)—INSTRUCTIONS—"SEDUCTION."**

The court sufficiently defined "seduction" when he told the jury that, before finding anything for appellee on account of the consequences to her of sexual intercourse with appellant, they must believe that she was induced by appellant's promise to marry her to have such intercourse with him, and if she was so induced, she was "led astray" and "from the path of rectitude," and, if she was so led because she relied on appellant's promise to marry her, she was entitled to have the jury take into consideration the consequences to her in determining the amount of damages they should award to her, and hence refusal of requested charge containing such definition was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 655.

For other definitions, see Words and Phrases, First and Second Series, Seduce, Seduction.]

**15. BREACH OF MARRIAGE PROMISE ⬦28—PREVIOUS SEDUCTION.**

The contention that a woman who had been once seduced can never be seduced again, so as to be entitled to damages therefor, is without support.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 40–43.]

**16. BREACH OF MARRIAGE PROMISE ⬦18—PLEADING—DEFENSES — PREVIOUS UNCHASTITY.**

In a suit for breach of marriage promise, previous unchastity of plaintiff must be pleaded as a defense.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 21–25, 48.]

**17. TRIAL ⬦207—INSTRUCTIONS.**

An instruction not to consider the testimony of a witness in determining the issue of plaintiff's right to recover against the defendant, but if you find for plaintiff you will consider the testimony of said witness only on the issue of the amount of plaintiff's recovery, if any, and for no other purpose, did not forbid the consideration of the witness' testimony on the issue of the credibility of the plaintiff, or of a witness who stated plaintiff had previously written him letters stating that she was pregnant, and that he was responsible for it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 498, 499, 501.]

**18. BREACH OF MARRIAGE PROMISE ⬦29—PLEADING—EVIDENCE—ADMISSIBILITY.**

Evidence of previous unchastity of plaintiff and of such letters was admissible only in mitigation of damages, where the issue was not pleaded as a defense.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 44, 45.]

Appeal from District Court, Hopkins County; Wm. Pierson, Judge.

Suit for breach of marriage promise by Eddie Bennett against C. M. Freeman. Judgment for plaintiff, and defendant appeals. Affirmed.

This was a suit by appellee against appellant for damages for a breach by him of a promise which she alleged he made to marry her. The appeal is from a judgment in appellee's favor for $1,000.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In her petition appellee alleged that about November 15, 1914, she and appellant mutually agreed to marry each other in the fall of 1915. She further alleged that she was induced by a reliance on appellant's promise to marry her to engage in sexual intercourse with him, which resulted in her giving birth to a child December 3, 1915. And she further alleged that about October 15, 1915, appellee broke the contract he had entered into with her. Appellant's answer consisted of exceptions, a denial of the charge that he contracted with appellee to marry her, and that he had had sexual intercourse with her.

Newman Phillips and C. C. McKinney, both of Cooper, Thornton & Thornton, of Sulphur Springs, and Sherrill & Starnes, and Crosby, Hamilton & Harrell, all of Greenville, for appellant. C. E. Sheppard and H. C. Connor, both of Sulphur Springs, R. F. Spearman and Sam D. Stinson, both of Greenville, and James Patteson, of Cooper, for appellee.

WILLSON, C. J. (after stating the facts as above). The action of the trial court in admitting and excluding testimony is the basis of the assignments numbered 1 to 13, inclusive, in appellant's brief. The contentions presented by these assignments will be disposed of in the order in which they are made in the brief.

[1, 2] 1. The claim that the court permitted appellee as a witness to testify over appellant's objection to a statement she made to third persons about being engaged to appellant is not supported by the record. It appears from the bill of exceptions that appellee testified without objection on the part of appellant that she made such a statement, and that appellant's objection was to her testifying as to who it was she made it to. Therefore this court is not called upon to determine whether the testimony of appellee that she had made such a statement was inadmissible and prejudicial to appellant or not. Certainly, if it was error, after she had testified that she made the statement, to permit her to say to whom she made it, the error was not one which should cause a reversal of the judgment. It appeared from the bill that appellee made the statement to her sister, her stepmother, Mrs. Eddins and Mrs. Smith. It has been held that it is permissible to show by the testimony of the plaintiff in a suit like this that she had communicated to her family the fact of her engagement to the defendant. Lewis v. Tapman, 90 Md. 294, 45 Atl. 459, 47 L. R. A. 385.

[3] 2. It was not error to permit appellee to testify that about all she owned "which could be called property" was a lot in Hugo. Vanderpool v. Richardson, 52 Mich. 336, 17 N. W. 936; 4 R. C. L. 174.

[4] 3. If it was error to refuse to permit appellant to prove by appellee on his cross-examination of her whether she wrote him from Durant that she was "going to work in the post office there September 1, 1915," or not, it should be treated as harmless. Appellant himself testified, without contradiction, that appellee so wrote him, in effect, from Durant. It was not claimed the testimony excluded was material for any other purpose than to discredit appellee's testimony that the agreement between her and appellant was that they would marry "in the fall of 1915." Appellee's going to work in Durant at the time stated would not have been inconsistent with her engagement to marry appellant in the fall, and the testimony would have tended very remotely, if at all, to prove that she and appellant had not agreed to marry then. The exclusion of the testimony, we are sure, was not "reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case." Rule 62a (149 S. W. x) for the government of Courts of Civil Appeals.

[5] 4. The contention made that the court permitted Dr. Crook to testify to the contents of a report he made covering the birth and death of appellee's child is not supported by the record. It appears from the bill of exceptions that what Dr. Crook did testify was that he "made the report just like she (appellee) said." He was not asked to do so, and did not undertake to state the contents of the report.

5. Appellant having testified that he did not know exactly when he "stopped associating" with appellee, but knew when it was that he refused to go with her, and that it was on the occasion of a party at Blaine Rattan's on January 22, 1915, to which he was invited by Mrs. Miller, complains because the court would not permit him, over appellee's objection that it was immaterial, to testify further that Mrs. Miller requested him to accompany appellee to the party. The court did not err in sustaining the objection. How the fact that Mrs. Miller requested appellant to accompany appellee to the party could possibly be material to any issue in the case we fail to see, and appellant in his brief suggests no reason why it was material.

[6] 6. The refusal of the court to permit appellant, over appellee's objection that same was immaterial and about a collateral matter, to testify that in his candidacy for the nomination for county clerk in 1916, "No issue was made against him except the charges made against him in this case," was not error. As we view it, there is nothing in the record which would have authorized the court to enter upon an inquiry as to the issues in appellant's race for county clerk.

[7] 7. If it was error to refuse to permit appellant, on his cross-examination of the witness Stell, to prove by the witness whether he had opposed the candidacy of his half-brother for the nomination of district attorney and helped to defeat him, because his half-brother was appellant's friend and supporter, it was not error sufficient to justify

a reversal of the judgment. The only purpose of the testimony was to show ill feeling of the witness toward appellant. This was shown sufficiently by Stell's testimony that he fought appellant in his campaign for renomination as county clerk in 1916, felt ill toward him, and had voluntarily come from another county than that in which the trial was had to testify as a witness against him.

8. The part excluded of the answer of the witness Mason to the third cross-interrogatory propounded to him plainly was not responsive to that interrogatory, and the court properly excluded it as evidence.

[8] 9-12. So the court properly excluded the testimony of the witness Mason that he shows certain compromising letters which he claimed to have received from appellee to T. D. Starnes, an attorney at Greenville, "in order," quoting the witness' language, "that I might ask his advice as an attorney in order that he might advise me." Appellee denied having written the letters, and the testimony excluded evidently was intended to strengthen that of the witness to the contrary. Plainly it would not have tended in the least to do so, and we agree with appellee that the court did not err when he excluded the testimony. Perhaps it would have been permissible, as corroborating Mason, to have shown by Starnes that the former exhibited such letters to him, but certainly testimony by Mason that he had exhibited such letters to other persons could add no strength to his testimony that he had received such letters. It may be, had appellant proposed to follow up the testimony by that of Starnes, showing that such letters had been exhibited to him by appellant, the testimony should not have been excluded; but it does not appear that appellant expected or could have made such proof by Starnes.

[9, 10] 13. The court should have excluded the statement of the witness Crook that he lost confidence in appellant because the latter in a conversation with him about appellee after the birth of her child "misrepresented some little things" to him. The statement was not in response to the question propounded to the witness, and was also inadmissible on other grounds. But we think it very unlikely that the error operated to prejudice appellant's rights. It appears from the bill of exceptions that the statement of the witness was not made in response to any question asked him, and that when he made it the court on his own motion interrupted the examination of the witness, declaring: "Gentlemen, I will give notice now we are not going to try out those; of my own motion I will efface those, because we will not take the time to try out those quibbles, and if the objection is not made the defendant will be bound;" whereupon appellant's counsel stated: "We are perfectly willing for him to answer," and the court further said: "I will give you notice now that we will not go into

it. Gentlemen, conclude it there. It is wholly immaterial to this case." The effect of what the court said to counsel in the presence of the jury was to exclude the statement as evidence, and we think it should be assumed that the jury as intelligent men understand the court to mean it was not to be considered by them.

[11] The action of the court in refusing appellant's special charge No. 1, to find for him because "under the pleadings and the law" the evidence was "insufficient to entitle plaintiff to recover," is made the basis of the twenty-fifth assignment. The assignment is not accompanied by such a statement from the record as the rules for briefing cases appealed to this court contemplate (rule 31 et seq., 142 S. W. xiii), and therefore it is not entitled to consideration. Laird v. Murray, 111 S. W. 780; Insurance Co. v. Wood, 133 S. W. 288. But we have considered it, and think it should be overruled. There was evidence from which the jury reasonably might have concluded that appellant promised to marry appellee, that he broke his promise, and that appellee as a consequence of the breach suffered injury.

[12] After instructing the jury, in the first paragraph of his charge, to find for appellee if they believe from the evidence "that on or about the 15th day of November, 1914, plaintiff and defendant mutually contracted and agreed to marry each other and to become husband and wife, and that thereafter defendant failed and refused to carry out said contract and agreement to marry the plaintiff, if any, and that by reason thereof plaintiff was injured and damaged as alleged by her in her petition," and after further instructing them, in the second paragraph, to find for appellant unless they believed from the evidence "that on or about the 15th day of November, 1914, the defendant promised and agreed to marry plaintiff," the court further instructed them, in the third paragraph of his charge, as follows:

"If you believe from the evidence that plaintiff and defendant mutually contracted and agreed to marry each other and to become husband and wife, and if you believe that during the existence of such agreement to marry, if any, the defendant induced plaintiff, by reason of said promise and agreement to marry, if any, to yield her person to him and to have sexual intercourse with him, and that by reason of such sexual intercourse, if any, plaintiff became pregnant and gave birth to a child, then and in that event you are instructed that you may consider same in estimating plaintiff's damages for the breach of said agreement and contract to marry, if any. But if you find from the evidence that the defendant did have sexual intercourse with plaintiff and that she became pregnant by reason thereof, yet the defendant would not be liable for damages for sexual intercourse, if any, and pregnancy unless defendant had promised and agreed to marry plaintiff and that such sexual intercourse, if any, was had during the existence of and by reason of such agreement and contract to marry, if any."

The correctness of the first and second paragraph of the charge is not directly challenged by any of the assignments in appellant's brief, but he insists that the third paragraph is erroneous, because, he asserts, the court thereby, in effect, told the jury it was "legal and legitimate for an unmarried woman to engage in illicit intercourse with the man to whom she is engaged," and authorized them to find in appellee's favor for damages for her resulting from illicit intercourse during her engagement to appellant, "without regard to the question of whether she was seduced or led from the path of virtue by reliance upon the alleged promise of marriage."

We do not think the paragraph of the charge in question is fairly subject to the criticism made of it. It did not authorize the jury, in determining the amount of their verdict, to consider the fact that appellee had become pregnant by appellant unless they believed that he had induced her to yield her person to him "by reason" of his promise to marry her, but, on the contrary, expressly told them appellant would not be liable in damages for the consequences to her of sexual intercourse with him unless he "had promised and agreed to marry her," and such intercourse "was had during the existence of and by reason of such agreement and contract to marry." As reasonably intelligent men we do not think the jury could have understood the instruction as authorizing them to award appellee anything because of the consequences to her of sexual intercourse with appellant unless they believed that she was induced by her reliance upon his promise to marry her to engage in such intercourse. It seems from a written argument filed by appellant that his criticism of the instruction is based on the use in it of the words "by reason," which have the same meaning, he says, as the word "because." If that word should be substituted for the words "by reason" where they appear in the instruction, the meaning thereof would not be changed, and it would not be subject to the criticism made of it.

[13] Complaint is made of the action of the court in refusing a special charge requested by appellant, instructing the jury to find for him if they believed appellee submitted her person to him because she loved him, and not because she relied on his promise to marry her. Appellant insists that it was error to refuse to so instruct the jury, because of testimony by appellee as follows, quoting from the statement in the brief:

"On each of these occasions that I submitted to Mr. Freeman I did so because I loved him; I trusted him. I believed he meant what he said, that he loved me. I could not help it."

We do not think this testimony, when considered in connection with the remainder of appellee's testimony, made the issue suggested by the instruction. Taken as a whole, appellees testimony was capable of no other construction than that she submitted to appellant because she loved him and relied on his promise to marry her. She said, in connection with the part of her testimony above quoted from appellant's brief:

"Such a thing as submitting to him would not have entered my mind if I had not been engaged to him and hadn't been in love with him and hadn't believed what he said. * * * On these occasions we always talked about our engagement, and said we were going to marry just as soon as he was able, and he always brought up that excuse that he didn't feel financially able to marry then."

[14] The seventeenth and eighteenth assignments are based on the refusal of the court to give to the jury the special charges numbered 4 and 5 requested by appellant. In the first of the two requested charges the word "seduction" was defined as meaning, "in general terms," "to withdraw one from the path of rectitude," "leading astray," and as implying, in a case like this, "that a woman of previous chaste character has been induced to consent to unlawful sexual relations by persuasion and the promise to marry." The charge concluded as follows:

"Therefore previous unlawful intercourse with others destroys the very basis upon which seduction must rest, namely, previous chastity, and would relieve the case of such aggravating circumstances. Therefore if you believe from the evidence that prior to the time when plaintiff alleges she became engaged to marry the defendant she was not a chaste woman, but had illicit sexual intercourse with another, then and in that event, if you so believe, she would not be entitled to recover anything on account of the alleged seduction and illicit intercourse."

The other of the two requested charges, had it been given to the jury, would have advised them that "the mere act of sexual intercourse voluntarily engaged in between a man and woman during an engagement of marriage does not entitle the woman to damages on account of the same or on account of the results thereof in a suit for a breach of promise of marriage," and would have instructed them to find for appellant "on the issue of seduction and the alleged damages growing out of the alleged acts of illicit intercourse, if they believed that plaintiff was not induced to depart from the path of virtue by the defendant under the promise of marriage, but that she was an unchaste woman before the time when she alleges that she engaged in such illicit acts with the defendant, or if you believe that she was not induced to depart from the path of rectitude by the defendant under a promise of marriage."

[15] It is insisted that the refusal of the requested charges was error because the court did not define "seduction" in his main charge. But we think he did, in effect, when he told the jury in the third paragraph of the main charge that before finding anything for appellee on account of the consequences to her of sexual intercourse with appellant they must believe that she was induced by appellant's promise to marry her to have

such intercourse with him. If she was so induced she was "led astray" and "from the path of rectitude," and if she was so led because she relied on appellant's promise to marry her, she was entitled to have the jury take into consideration the consequences to her in determining the amount of damages they should award to her. It appears from the written argument filed by appellant, before mentioned, that the theory upon which he thinks the giving of the third paragraph of the main charge and refusal of the special charges numbered 4 and 5 was error is that appellee could not have been "seduced" by appellant if before he had sexual intercourse with her she had had such intercourse with the witness Mason. In other words, the contention in effect is that a woman who had been once seduced can never be seduced again so as to be entitled to damages therefor. The proposition is, we think, without support of either reason or authority. That it does not announce the law was determined by the Supreme Court of Michigan in Houser v. Carmody, 173 Mich. 121, 139 N. W. 9, where it was held, quoting from the syllabus, that:

"Notwithstanding plaintiff's lapse from virtue, if the jury finds that she had retrieved her character and led a correct life thereafter, until defendant, by his promises and solicitations, induced her to have intercourse with him, such acts would amount to seduction."

[16] The authorities cited by appellant in support of his contention are to the effect that unchastity of the plaintiff, unknown to the defendant at the time he made the promise, is, when pleaded, a defense to an action for breach of a promise to marry. Appellant in his pleading did not set up any such matter as a defense against the recovery appellee sought against him, but defended on the ground alone that he had never promised to marry appellee and had never had sexual intercourse with her. 9 C. J. 348; 5 Cyc. 1011; 4 R. C. L. 165; Bowman v. Bowman, 153 Ind. 498, 55 N. E. 422; Cox v. Edwards, 120 Minn. 512, 139 N. W. 1070; Bracken v. Dinning, 141 Ky. 265, 132 S. W. 425.

Appellant's witness Mason testified by deposition that he was a lawyer; that he lived in Greenville, and that in 1910 and until February or March, 1911, he "kept company with appellee." He further testified that within a month or two after he "quit keeping company with her" he received nine or ten letters from appellee, some of which, he said, he afterwards burned and the others of which he lost. He further testified with reference to the contents of the letters:

"She (appellee) claimed in her letters to me that she was pregnant and charged me with being responsible for it. I can't state the language. All I can do is to give the substance of said letters, and that was that she was pregnant and that I was responsible for it, and demanded in some of them that I marry her and in others that I do something about it."

The witness further testified that he had a conversation with appellee after he received the letters from her, in which she admitted "she was not pregnant as she had previously contended." Appellee denied having written any such letters to Mason or having had any such conversation with him. With reference to the testimony of the witness Mason the court at appellee's request instructed the jury as follows:

"You will not consider the testimony of the witness Albert F. Mason in determining the issue of plaintiff's right to recover against the defendant, but if you find for the plaintiff you will consider the testimony of said witness only on the issue of the amount of plaintiff's recovery, if any, and for no other purpose."

[17, 18] Appellant objected to the instruction, and vigorously insists that the court erred when he overruled the objection and instructed the jury as set out above. The grounds of the objection were: 1. That the instruction was on the weight of the evidence. 2. That he (appellant) was entitled to have the jury consider Mason's testimony (1) on the issue as to whether if he promised to marry appellee he was induced to do so by fraud on her part in concealing from him the fact that she had had illicit relations with Mason and was unchaste; and (2) on the issue as to her credibility. It is plain that if the instruction was not subject to objection on the other ground specified, it was not on the weight of the evidence. It is also plain that the instruction was not subject to criticism on the ground that appellant was entitled to have the jury consider Mason's testimony on the issue, as asserted, as to whether appellee had perpetrated a fraud on appellant or not, because, as we have seen, no such issue was made by the pleadings. And it is also plain that the instruction did not forbid the jury from considering Mason's testimony on the issue as to whether he told the truth when he said he received the letters from her, or she told the truth when she said she wrote and sent him no such letters. It is clear, we think, in the light of the authorities, appellant having failed by his pleading to defend on the ground that a promise on his part to marry appellee was procured by fraud she practiced on him, that Mason's testimony was admissible only in mitigation of the damages appellee was entitled to recover, and therefore that it was not error to give to the jury the instruction complained of. 9 C. J. 359; 5 Cyc. 1015; 4 R. C. L. 160.

There is no error in the judgment, and it is affirmed.