(No. 26090.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES KRAUS, Plaintiff in Error.

*Opinion filed Sept. 15, 1941—Rehearing denied November 12, 1941.*

Shaw and Wilson, JJ., dissenting.

Joseph Lustfield, for plaintiff in error.

George F. Barrett, Attorney General, and Thomas J. Courtney, State's Attorney, (Edward E. Wilson, John T. Gallagher, James A. Brown, and Melvin S. Rembe, of counsel,) for the People.

Mr. Justice Farthing delivered the opinion of the court:

A jury in the criminal court of Cook county found Charles Kraus guilty of petit larceny and found the value of the water stolen from the town of Cicero to be $14.99. He was sentenced to the Cook county jail for five months and fined one dollar and costs. He has sued out this writ of error to review that judgment and one of his claims is that his constitutional rights were invaded by an unreasonable search and seizure, for which reason he says the court erred when it denied his motion to suppress evidence.

On March 4, 1940, some of the officials of the Milk Wagon Drivers Union and the Inside Dairy Workers Union informed the State's attorney of Cook county that they had evidence showing a theft of water by the West Towns Dairy, Inc., an Illinois corporation, whose place of business was located at 1623 South Cicero avenue, Cicero, Illinois. Charles Kraus was the president of that corporation. The matter was referred to Brown, an assistant State's attorney of Cook county. Several employees of the dairy, who at that time were on strike, were questioned by him.

On March 8, 1940, Robert Pavalla, a non-striking employee, was apprehended by two Chicago police officers, Robert Ward and Willis Brennan, who had been assigned by the Chicago police department to the State's attorney's office. Pavalla was taken from his milk route by the officers to the Cicero town hall,. where he was questioned by Brown, but he refused to answer at that time. He was then taken before the grand jury in the matter of *People v. John Doe.* As a result of Pavalla's testimony thus obtained, Robert Ward, the Chicago patrolman, appeared before Henry J. Sandusky, the police magistrate of Cicero, and signed a complaint against Charles Kraus charging him with larceny of water from the town of Cicero. A warrant for Kraus's arrest was issued and delivered to Cicero police officers for execution. They, together with Brown and several employees of the water department of Cicero, went to the dairy and the Cicero officers arrested Kraus. Brown and the water department employees then forced their way into the bottling room of the dairy, which was toward the rear. Kraus and his attorney barred the door to the ice-box room, which was adjacent to the bottling room, and refused to allow the workmen to enter. Brown then ordered the Cicero police officers forcibly to remove the attorney and Kraus, and to take the laborers into the ice-box and break the floor at the places he had indicated on a floor plan of the dairy. The Cicero police officers refused to do this after Kraus' attorney called their attention to the fact they had no search warrant, and their action was approved by a Cicero police captain who was consulted by telephone. Kraus was then taken to the Cicero police station by the Cicero officers. Brown then called his Chicago police officers, Ward and Brennan. When they arrived they forcibly removed Kraus' attorney from in front of the ice-box door and took the workmen into the ice-box. A 10-inch concrete floor and

an 18-inch cork sub-floor were broken up in two rooms, a 14-inch brick wall was broken through, and some pieces of pipe 1.5 inches in diameter were removed. This had been attached to the incoming four-inch water pipe, and ran around the water meter to the ice-box, and thence back to the meter room where it was attached to the dairy water pipes. In the record this is designated as a "by-pass" or "tapping" pipe.

Subsequently, on March 14, 1940, the grand jury returned the indictment upon which Kraus was later found guilty. The larceny complaint filed before the Cicero police magistrate by the Chicago police officer, Ward, was dismissed on March 22, 1940. A motion to quash the above indictment because water could not be the subject of larceny was properly denied. Water in the pipes of a waterworks system, gas, and electricity, are the subject of larceny. (*Clark* v. *State*, 170 Pac. 274; *Woods* v. *People*, 222 Ill. 293; *People* v. *Menagas*, 367 id. 330.) Cases involving water in lakes or running streams are not in point. The relevant facts as to the search and seizure were agreed upon by counsel, but the court denied defendant's motion to suppress the pipes and evidence of the water theft obtained through the search directed by Brown and the Chicago police. The defendant then pleaded not guilty.

At the trial, Charles Brabec, a meter reader for the water bureau of the town of Cicero, testified that in February, 1940, he installed a new meter at the dairy. He tried to shut off the water by closing the valve in the four-inch intake pipe. He then began removing the meter, but stopped when he noticed that water under pressure ran from the meter. He saw a pipe coming through the wall about three feet above the meter. He went into the next room and found a pipe which led from the cement floor to the point where it pierced the wall and entered the meter room. He closed a valve in this pipe with a wrench. This shut off the water and he finished changing the meter.

A report of the condition found was made to the water department by his helper. On cross-examination Brabec testified that on one occasion he removed a fish from the water meter at the dairy, and that this fish would cause the meter to stop registering. He also said this fish was not placed in the meter by human hands.

Robert Pavalla was called as a witness for the People. He testified, in substance, that he put in the tapping pipe at the direction of Charles Kraus, but that he did not remember Kraus' specific directions or the exact time he did the work. In doing this work he was assisted by Johnny Barrell. Brown then read to Pavalla from a transcript of the proceedings before the grand jury which had indicted Kraus. Brown asked Pavalla whether the questions read had been asked of him and whether he had given the answers read to him from the transcript. In each instance Pavalla answered in the affirmative. This was over the specific objection that the People thereby were attempting to impeach their own witness. The prosecutor made no claim that he was attempting to refresh the witness's memory. Upon cross-examination, Kraus' counsel asked the court to direct Brown to turn the transcript of the grand jury proceedings over to him so that he could cross-examine the witness on it. The court refused to do this.

Johnny Barrell testified that at the direction of Pavalla he closed the valve at the main water line in the pipe leading to the dairy and that this stopped the flow of water so that the tapping pipe could be inserted. He also testified that he helped with the digging when the tapping pipe was put in and that he thought the work had been done about August, 1939.

Several employees of the water department also testified but it will not be necessary to detail their testimony. In substance, they said the city of Cicero purchased its water from the city of Chicago, and then resold it to various customers, including the West Towns Dairy, Inc., at

various rates, depending on the type of service. Ledger sheets showing the amount of water used by the dairy were introduced in evidence. They showed a substantial drop in the water consumed at the dairy after September, 1939.

Kraus' motion to suppress evidence was based on the ground that the evidence was obtained through an unreasonable search and seizure in violation of section 6 of article 2 of the Illinois constitution and the fourth amendment to the Federal constitution. The People contend that, as an incident to the lawful arrest of Kraus, Brown, the Chicago police, and the laborers of the water department, had a right, without a search warrant, contemporaneously to search the dairy in order to find and seize the things used to carry on the criminal enterprise. They rely on *Marron* v. *United States,* 275 U. S. 192 and *People* v. *Dubin,* 367 Ill. 229, 235. In the cases just cited, the arresting officers made the searches incidentally to the arrests. In the *Marron case,* whiskey and a ledger were found in the closet of a tavern, and in the *Dubin case,* certain items of equipment used by the defendant in violating the statute against dentists advertising, were found and taken from the defendant's premises. In the instant case the arrest was made in the town of Cicero by Cicero police upon a warrant issued by a Cicero police magistrate. The question before us is whether the search and seizure by the Chicago police was unlawful because unreasonable. It is illogical to contend that after the Cicero police refused to make the search because they had no search warrant, Brown, the two Chicago patrolmen attached to the State's attorney's office, and laborers from the Cicero water department, as an incident to Kraus' arrest by the Cicero officers, could partially demolish the dairy building, and that this constituted a lawful and reasonable search and seizure under the facts just detailed. The Chicago police made no arrest and were mere bystanders, and therefore it cannot be contended that their search was an incident to the arrest. They

were acting outside the corporate limits of Chicago and were not in "hot pursuit." Under these facts their powers to arrest ceased to exist. It is contended, however, that they were acting as assistants to Brown, the assistant State's attorney, and that they could exercise the powers possessed by him. That has no effect, for assistant State's attorney Brown had no authority to arrest Kraus or to make this search or to demolish the dairy. Brown knew, in advance, where the tapping pipe was located under the floors. This was an unreasonable search, the kind that is prohibited by both the United States and the Illinois constitutions. It was error to deny Kraus' motion to suppress the evidence.

Kraus also contends the court erred when it allowed the People to impeach their own witness, Pavalla, by use of the transcript of his testimony before the grand jury. In their brief the People say this was not impeachment of their own witness and that they used the transcript only to refresh Pavalla's memory. It is fundamental that a witness' memory can only be refreshed after it has been established that he has no memory concerning the fact in question. Pavalla had testified, before the transcript was used, that he put in the tapping pipe at Kraus' direction, and described the operation of this pipe. He said his conversation with Kraus took place from a week to a month before he did the work. When he was asked when the pipe was put in, he said he could fix the time within two months but did not remember the exact day the work was done. At another point he said he did not remember all that Kraus said when he ordered Pavalla to do the work.

Pavalla was not a willing witness, but it is obvious from this record that he did not profess ignorance of the facts and that he also did not show any great lack of memory of material facts. The State's attorney did not ask Pavalla to fix the date the work was done, as accurately as he could fix it. The People made no claim at the trial that they should be allowed to refresh the witness' memory. Over

the specific objection that they were attempting to impeach their own witness they were permitted to use the transcript above referred to. The apparent purpose was to impeach Pavalla and this was error. It was also error to deny Kraus' counsel the use of this transcript in cross-examination. (*People* v. *Borella,* 362 Ill. 218.) This does not conflict with our holding in *Cannon* v. *People,* 141 Ill. 270. There, the People did not use the transcript and, it was held that, in such a situation, the State's attorney need not furnish it to the defendant's counsel.

Kraus' contention that the city of Cicero was engaged in rendering water service and for this reason water could not be stolen, cannot be sustained. He relies on *City of Chicago* v. *Ames,* 365 Ill. 529, where this court held utility companies were not engaged in the business of selling tangible personal property for use or consumption and not for resale, and therefore were not subject to the tax imposed by the Retailers' Occupation Tax act. (Ill. Rev. Stat. 1939, chap. 120, pars. 440, *et seq.*) That case is not in point.

Kraus contends this record does not prove what, if any, amount of water went through the by-pass and was stolen. The evidence is the pipe to the meter was four inches in diameter, and that on the day the meter was changed there was water going through the by-pass. Over objection, water department ledger sheets were introduced in evidence to show that water bills decreased approximately $150 per month beginning with September, 1939. This is a circumstance to be considered, and there is evidence that, on two occasions, fish were found in the meter; that they were not put there by human hands, and that they stopped the meter from registering. To show that water was stolen, the People had to show some water went through the tapping pipe. They did make such a showing and the question as to the value of the water thus taken was one for the jury.

Other errors are assigned but need not be considered. Because of the errors pointed out the judgment of the trial court is reversed and the case remanded for trial on the charge of petit larceny.

*Reversed and remanded, with directions.*

SHAW and WILSON, JJ., dissenting.