COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


FREDDIE W. ROBINSON, JR.

                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0465-09-2                    JUDGE SAM W. COLEMAN III
                                                       APRIL 5, 2011

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Walter W. Stout, III, Judge

          Shannon L. Taylor (Boone Beale, on brief), for appellant.

          Karen Misbach, Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


       Freddie W. Robinson, Jr. was convicted following a jury trial of felony obtaining or

attempting to obtain utility service by fraud in violation of Code § 18.2-187.1.  On appeal,

Robinson contends the Commonwealth failed to demonstrate the value of the services he stole or

tried to steal was at least $200.  For the reasons that follow, we disagree and affirm the trial

court's decision.

                                       BACKGROUND

       On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom.'"  Kelly v. Commonwealth, 41 Va. App. 250,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting <u>Watkins v. Commonwealth</u>, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).

So viewed, the evidence proved that the gas meter at Robinson's residence was removed on March 22, 2007 because his account was delinquent in an amount in excess of $3,000. On January 9, 2008, Carl Shaw, an investigator for the Department of Public Utilities, visited Robinson's house. Shaw observed a metal flex line connecting Robinson's house to the city gas line. Robinson admitted to Shaw that he had had someone connect the line for him. Shaw noted that the service valve was activated, indicating gas was flowing into the house.

The Commonwealth introduced documents detailing Robinson's monthly gas consumption and billing history from April 21, 2005 through March 22, 2007. The documents demonstrated that from late April through December 2005, Robinson consumed over $1,300 worth of gas. From April through December 2006, he consumed over $1,000 worth of gas. The record reveals the house was equipped with a gas furnace. Robinson conceded on brief and at oral argument that the furnace's pilot light was lit at the time Shaw visited the property. Although Robinson denied at trial that he told Shaw he had arranged for the gas to be connected, he admitted he was aware of the illegal connection and did not contact the city regarding the matter.

Robinson presented the testimony of Mark Lee, a furnace repairman. Lee testified he responded to Robinson's service call "in the fall time" of 2007 and determined the furnace's blower was not functioning. He explained that when he examined the furnace, gas was available to it, but that without a functioning blower, the furnace would not produce heat or use any gas. He did not repair the equipment while there. Robinson testified the furnace stopped working in March 2007 before his gas service was cut off and that he had not consumed any gas during the relevant time period.

In his motion to set aside the jury's guilty verdict, Robinson argued the Commonwealth had failed to demonstrate the value of any gas consumed was $200 or more and, thus, the evidence was insufficient to support the felony conviction. The trial court overruled the motion, noting there was testimony regarding the amount of money Robinson would have needed to pay in order to restore service to the residence as well as the evidence regarding past usage of gas during comparable time periods.

ANALYSIS

In reviewing the sufficiency of the evidence, the jury's verdict "shall not be set aside unless it appears from the evidence that [the verdict] is plainly wrong or without evidence to support it." Code § 8.01-680; see Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). "The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Marable v. Commonwealth, 27 Va. App. 505, 509, 500 S.E.2d 233, 235 (1998) (internal citation omitted). "This Court does not substitute its judgment for that of the trier of fact." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999) (citing Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992)). The only relevant inquiry is "whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

The indictment charged that Robinson "did unlawfully and feloniously obtain or attempt to obtain . . . gas . . . having a value of $200 or more, by the use of any scheme, device, means [or] method . . . with intent to avoid payment of lawful charges therefor," citing Code § 18.2-187.1(B).

Code § 18.2-187.1 provides, in relevant part:

> B. It shall be unlawful for any person to obtain or attempt to obtain oil, electric, gas, water, telephone, telegraph, cable

television or electronic communication service by the use of any scheme, device, means or method, or by a false application for service with intent to avoid payment of lawful charges therefor.

\* \* \* \* \* \* \*

D. Any person who violates any provisions of this section, if the value of service, credit or benefit procured is $ 200 or more, shall be guilty of a Class 6 felony; or if the value is less than $ 200, shall be guilty of a Class 1 misdemeanor.

The Commonwealth's attorney argued in closing: "The evidence before you is clear, based on the conducts [sic] of the parties, that the defendant did, indeed, attempt to obtain – [w]e don't know if absolutely obtained, but through his conduct, attempted to obtain gas services and benefits valued at, at least, in the thousands of dollars . . . ." The jury returned the following verdict: "We the jury, find the defendant guilty of *knowingly obtaining or attempting to obtain*, with the intent to defraud, gas service with the value of such service, credit, or benefit *procured or attempted* was $200 or more." (Emphasis added).

On appeal, Robinson asserts "there was no evidence of the *actual* cost incurred during the period alleged in the indictment; there was no evidence of the value of the gas *used* during the time period between March 2007 and January 9, 2008 . . . ." (Emphasis added). Robinson argues the Commonwealth's evidence needed to prove beyond a reasonable doubt that the value of the gas service that appellant actually obtained was at least $200.

As noted above, the jury concluded the evidence demonstrated Robinson either actually obtained $200 worth of gas or attempted to obtain such an amount of gas. It is unclear from the jury's verdict whether the jury believed Robinson actually obtained that amount of gas or just attempted to obtain it. Thus, we hold that the evidence is sufficient to support the jury's finding that the value of the service Robinson actually received exceeded $200 or, alternatively, the value of the service that Robinson attempted and intended to obtain was in excess of $200. The

evidence as to value of the gas service received and that Robinson attempted to obtain was sufficient to support the jury's verdict.

"Code § 18.2-187.1 is a species of larceny. As such, the 'value of service, credit or benefit procured' is to be measured at the time the services were taken." Penley v. Commonwealth, 51 Va. App. 166, 169, 655 S.E.2d 746, 747 (2008). To sustain a conviction for attempted larceny, the evidence must demonstrate 1) the intent to commit the underlying crime, and 2) an overt, yet ineffectual, act towards the completion of that crime. See Jay v. Commonwealth, 275 Va. 510, 525, 659 S.E.2d 311, 319-20 (2008). Here, because the larceny offense, as defined under the statute, is both (1) a continuing offense for which actual value will accumulate with each day's usage, and (2) an attempt to obtain the value of future service, whether the value is in excess of $200 is not limited to the value of gas consumed but also includes the value of the gas services that Robinson attempted to obtain.[1]

Value, like any other fact in a case, may be proved by circumstantial evidence. See Veney v. Commonwealth, 212 Va. 805, 806, 188 S.E.2d 80, 81 (1972). "[D]irect proof of a fact is not essential if circumstantial evidence proves the same fact and at the same time excludes every reasonable hypothesis to the contrary." Id.

Evidence of Robinson's past use of gas at his residence during the corresponding times of the year was relevant and material to prove the value of the gas services Robinson fraudulently took or attempted to take during the comparable period after he reconnected the service and, accordingly, proved the value of the gas Robinson took or attempted to take was well over $200. Evidence of past use of utilities can demonstrate the amount and value of utilities stolen during

---

[1] It is noteworthy that the General Assembly included in Code § 18.2-187.1 a provision that an "attempt" to obtain services that would be valued in excess of $200 is a felony violation, rather than requiring the Commonwealth to rely upon the general criminal attempt statute, Code § 18.2-26.

similar time periods.  See, e.g., Woods v. Illinois, 78 N.E. 607 (Ill. 1906); Kalamazoo v. Standard Paper Co., 148 N.W. 743 (Mich. 1914); Illinois v. Kraus, 37 N.E.2d 182 (Ill. 1941).  In Timm v. New York State Public Service Commission, 534 N.Y.S.2d 466 (N.Y. App. Div. 1988), the Supreme Court of New York, Appellate Division, accepted evidence of Timm's utility usage prior to the date he diverted the utility to calculate the amount of utility service he stole, finding that "method to be the most accurate inasmuch as the tampering by petitioner's household precluded an exact estimate."  Id. at 468.  Similarly, in this case, by bypassing the gas meter, Robinson prevented an exact computation of the amount of gas he illegally obtained.

When the value of goods taken is at issue, "the facts and circumstances proven [must be] such as to permit an intelligent and probable estimate of the amount of damages or loss sustained."  Gertler v. Bowling, 202 Va. 213, 215, 116 S.E.2d 268, 270 (1960).  Although the Commonwealth did not prove the exact value of the services Robinson took or attempted to take, the evidence of his prior gas usage demonstrated the value of the services necessary to operate his furnace during cold weather would necessarily far exceed $200.

> "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 31-32 (2005), cert. denied, 547 U.S. 1136 (2006).  Our Supreme Court has held that "'circumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'"  Finney v. Commonwealth, 277 Va. 83, 89, 671 S.E.2d 169, 173 (2009) (quoting Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441 (2000)).  Furthermore, circumstantial evidence "is not viewed in isolation."  Muhammad, 269 Va. at 479, 619 S.E.2d at 32.  "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."  Id. (citation omitted).

Brown v. Commonwealth, 54 Va. App. 107, 119, 676 S.E.2d 326, 332 (2009).

This Court employs a deferential standard of review "not only to the historical facts themselves, but the inferences from those facts as well." Cooper v. Commonwealth, 54 Va. App. 558, 572, 680 S.E.2d 361, 368 (2009) (internal quotation marks and citation omitted). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991). Here, based upon the evidence of Robinson's behavior and past usage of the utility, the jury reasonably inferred Robinson diverted the gas to his residence in order to continue to use the gas as he had done in the past.

Due to a delinquency in his account exceeding $3,000, Robinson's gas service was disconnected in March of 2007. He admitted that sometime thereafter his gas line was reconnected without authorization but with his knowledge and without him paying the delinquency. The evidence further proved that as of January 9, 2008, gas "was entering the residence," thus indicating that Robinson was actually consuming gas at his house on that date. Furthermore, although the factfinder was entitled to disregard the testimony of Lee that the furnace's blower was not working, Lee confirmed that gas was available to the furnace at the time he examined it, proving that the illegal connection had been made, at the latest, in the fall of 2007. The fact that Robinson had a furnace repairman look at the furnace several months after his gas had been disconnected is further evidence in support of the jury's verdict that he intended to continue to use the illegally obtained services, as it suggests Robinson sought to heat the residence during the winter months with the gas-powered furnace. In fact, Robinson admitted at trial that he was aware of the illegal connection and explained he sought to repair the furnace because his tenant recently had "complained about how chilly it was" in the residence, thus indicating the baseboard heat he claimed he was using to heat the house was inadequate. Furthermore, in order to heat the house with the same furnace he had used in the past, Robinson

would necessarily have to consume a similar amount of gas and the cost or value of such service would be comparable to his prior usage.

Therefore, the circumstantial evidence in its entirety, including the evidence of Robinson's past gas usage, his admissions, and the evidence regarding when gas was available and actually being used at the residence, adequately demonstrated Robinson used or attempted to use over $200 of gas.

Thus, we find the evidence was sufficient to prove the actual value of the gas that Robinson used or attempted to use after reconnecting the service after it had been disconnected in March of 2007 and January 9, 2008 was far in excess of $200.

For the foregoing reasons, we find the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of obtaining or, at a minimum, attempting to obtain at least $200 worth of utility service by fraud.

Accordingly, the decision of the trial court is affirmed.

<u>Affirmed.</u>

Petty, J., concurring.

The majority concludes that "the evidence is sufficient to support the jury's finding that the value of the service Robinson actually received exceeded $200 or, alternatively, the value of the service that Robinson attempted and intended to obtain was in excess of $200." Supra at 4. I agree with the latter conclusion, but disagree with the former. Therefore, for the reasons I discuss below, I concur only in the judgment of the opinion.

In this case, the Commonwealth unquestionably established that the City of Richmond disconnected Robinson's gas service on March 22, 2007, and that Robinson reconnected the gas line on some unknown date prior to January 9, 2008. The Commonwealth also unquestionably established that between April 2005 and March 2007, Robinson's monthly gas bills from the City of Richmond ranged from a high of $655.26 in March 2007 to a low of $22.90 in September 2006 and averaged $418.75 for the five months prior to the termination of service.[2] It is from this evidence the Commonwealth argues that the jury properly inferred that Robinson obtained natural gas from the City of Richmond having a value of $200 or more. Because I find this to be an inference built upon a speculative inference, I believe that it is simply an inference too far.

To be sure, "[i]nferences and presumptions are a staple of our adversary system of factfinding." Cnty. Court v. Allen, 442 U.S. 140, 156 (1979). Logic dictates that it should be permissible for "the trier of fact to determine the existence of an element of the crime—that is,

---

[2] The only other evidence relevant to the value of the gas Robinson consumed after he reconnected his service came from Marvin Lee, a heating and air conditioning repairman. Lee testified that sometime in the fall of 2007, Robinson called him out to repair his gas furnace. Lee found that "gas was available" for the furnace to operate, but that the blower motor was not functioning and thus the furnace was inoperable. Lee left without replacing the motor because Robinson could not afford to have it replaced. While the majority states Robinson conceded that "the furnace pilot light was lit *at the time Shaw visited the property*," supra at 2 (emphasis added), I do not believe that the statement by appellant's counsel was anything more than a simple slip of the tongue. Shaw testified unequivocally that he did "not enter the address at all" (J.A. at 43) and that "[f]rom the evidence that [he] saw, [he] didn't feel the need was necessary" to go inside and check to see if gas was being used (J.A. at 103).

an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." Id. "Thus, a factfinder may 'draw reasonable inferences from basic facts to ultimate facts,' unless doing so would push 'into the realm of *non sequitur*.'" Holloway v. Commonwealth, 57 Va. App. 658, 664, __ S.E.2d __, __ (2011) (en banc) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004), and Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006)). However, "[a]n inference loses its rationality . . . when it becomes so attenuated as to appear to stand alone, deriving none of its probative strength from the proven basic facts." Thomas, 48 Va. App. at 608, 633 S.E.2d at 231. While courts have often discussed inferences in the context of the constitutionality of statutory inferences, the rationale used applies equally to the reasonableness of inferences flowing from the evidence presented. Thus, in evaluating whether an inference is permissible, "'there are limits. It is essential that there shall be some rational connection between the fact proved and the ultimate fact [inferred], and that the inference of one fact from proof of another shall not be so unreasonable as to be . . . purely arbitrary . . . .'" Jennings v. Commonwealth, 155 Va. 1075, 1080, 156 S.E. 394, 396 (1931) (quoting McFarland v. Am. Sugar Ref. Co., 241 U.S. 79, 86 (1916)). I believe that an inference "must be regarded as 'irrational' or 'arbitrary,' and hence [unreasonable], unless it can at least be said with substantial assurance that the [inferred] fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States, 395 U.S. 6, 36 (1969).

Here, while the Commonwealth did establish the cost of the gas Robinson consumed in prior months, it did not provide any evidence to establish that the variables inherent in the calculation of that cost remained relatively constant during the period in question. Specifically, the Commonwealth did not offer any evidence to establish that the price of the gas per cubic foot or the volume of the gas consumed, the two factors that determine the monthly bill, remained

comparable. The volume of gas consumed is itself a variable, determined both by the number of gas appliances in use and, in the case of a furnace, the need for heat. The Commonwealth did not establish either of these determinative facts. There was no evidence that the gas appliances in use from April 2005 through March 2007 were in use after the gas line was reconnected. In fact, the evidence was just to the contrary. The furnace, the only gas appliance proven to be in the house, was not operational at the beginning of the 2007–2008 heating season. Additionally, the Commonwealth presented no evidence that the need for heat, as determined by, *inter alia*, the outside temperatures during the relevant period, was comparable to what it had been in previous years. Finally, the price of natural gas, like all commodities, fluctuates,[3] and the Commonwealth did not present any evidence to establish its range of fluctuation during the months in question.

While I agree with the majority that evidence of past use of utilities can be probative of the amount and value of utilities stolen during similar periods, it is incumbent on the Commonwealth to establish that the periods were, in fact, similar.[4] Here, in order to reach that

_____

[3] In a report presented to the Richmond City Council, the City Auditor stated the obvious: "The price of natural gas is affected by numerous factors such as weather, economic activity, and availability of supplies. Depending upon the timing and the strength of these factors, the price of natural gas can increase or decrease significantly." Dep't of Pub. Utils., Audit Report No. 2007-05, Natural Gas Hedging Practices Review 7 (2006).

[4] The majority cites Illinois v. Kraus, 37 N.E.2d 182 (Ill. 1941); Woods v. Illinois, 78 N.E. 607 (Ill. 1906); City of Kalamazoo v. Standard Paper Co., 148 N.W. 743 (Mich. 1914); and Timm v. New York State Public Service Commission, 534 N.Y.S.2d 466 (N.Y. App. Div. 1988), to support its conclusion that "[e]vidence of past use of utilities can demonstrate the amount and value of utilities stolen during similar time periods." Supra at 5-6. I do not believe that any of these opinions are instructive on how the Commonwealth can establish that the time periods are in fact similar. Timm involved a civil administrative appeal of a utility company's billing of a customer for un-metered electrical service. 534 N.Y.S.2d at 467. Without analysis, the court simply stated that an extrapolation based on prior usage was "the most accurate [method of computation] inasmuch as the tampering by petitioner's household precluded an exact estimate." Id. at 468. Standard Paper Co. likewise involved a civil case in which the utility company claimed damages "for the highest amount of water which could possibly have been used by the defendant." 148 N.W. at 747. There the court simply stated, "Taking the water in the way it did, the defendant must bear the risk of uncertainty thus produced." Id. In Woods, the only issue regarding the value of the gas stolen was whether the amount of gas illegally obtained each day

conclusion, the jury would have had to speculate as to exactly when Robinson reconnected the gas line, speculate that the same gas appliances remained in use, speculate that the outside temperatures were approximately the same, and speculate that the price of gas remained relatively constant. This, I believe, stretches the inference relied on by the Commonwealth into the realm of *non sequitur*. As a result, I disagree with the majority's apparent conclusion that the Commonwealth's evidence was sufficient to prove that the value of natural gas Robinson actually consumed met the statutory threshold of $200.

That having been said, I believe that when Robinson reconnected his gas supply, he did so in an attempt to obtain $200 or more worth of gas. Thus, I believe the evidence does support the jury's alternative finding that Robinson attempted to steal that amount of gas.

Robinson was indicted for "unlawfully and feloniously *obtain[ing] or attempt[ing] to obtain* . . . gas . . . having a value of $200 or more . . . with intent to avoid payment of lawful charges therefor." (Emphasis added). In his closing argument to the jury, the Commonwealth's attorney argued: "The evidence before you is clear, based on the conducts [sic] of the parties, that the defendant did, indeed, attempt to obtain—[w]e don't know if absolutely obtained, but through his conduct, attempted to obtain gas services and benefits valued at, at least, in the thousands of dollars . . . ." The jury, in its verdict, found Robinson "guilty of knowingly obtaining or attempting to obtain with the intent to defraud gas service" worth more than $200.

could be treated as a continuous taking for purposes of establishing value. 78 N.E. at 608. Finally, in Kraus, the defendant was convicted of petit larceny of less than $15 worth of water. 37 N.E.2d at 183. The issue of the precise value of the water was not before the court. The defendant contended that there was no proof as to what, if any, amount of water was stolen. Id. at 186. The court simply noted that (1) the water department records showed that water bills decreased approximately $150 a month six months prior to the discovery of the theft, and (2) there was evidence that the water pipes were clogged with fish that stopped the meter from registering. Id. The court then concluded, "To show that water was stolen, the People had to show water went through the tapping pipe. They did make such a showing and the question as to the value of the water thus taken was one for the jury." Id.

"[A]n attempt to commit a crime consists of two elements: '(1) [t]he intent to commit a crime; and (2) a direct act done towards its commission, but falling short of the execution of the ultimate design.'" Jay v. Commonwealth, 275 Va. 510, 525, 659 S.E.2d 311, 319 (2008) (second alteration in original) (quoting Glover v. Commonwealth, 86 Va. 382, 385, 10 S.E. 420, 421 (1889)). Here, the evidence clearly supports the inference that Robinson reconnected the gas line in order to heat his house.[5] Based on his prior gas bills, Robinson surely must have known that had the City not discovered the reconnected line and had the diversion gone on indefinitely, he would have obtained well in excess of $200 worth of natural gas. Thus, I conclude that when Robinson reconnected the gas line—a direct act done towards the commission of the offense—he did so with the intent to obtain natural gas worth $200 or more. Accordingly, I concur in the holding of the majority that the evidence was sufficient to support Robinson's conviction under Code § 18.2-187.1 for an attempt to illegally obtain gas worth $200 or more from the City of Richmond.

_____

[5] The fact that Robinson was unable to exploit his illegal source of gas because the furnace was not working is irrelevant. While it might have been factually impossible for him to use over $200 worth of gas, that does not prevent his conviction for an attempt to do so. See Hix v. Commonwealth, 270 Va. 335, 342, 619 S.E.2d 80, 84 (2005) ("'[W]hat is usually referred to as "factual impossibility" is no defense to a charge of attempt. That is, if what the defendant intends to accomplish is proscribed by the criminal law, but he is unable to bring about that result because of some circumstances unknown to him when he engaged in the attempt, then he may be convicted.'" (quoting 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 11.5(a)(2) (2d ed. 2003))).